792 So.2d 899 (2001)
STATE of Louisiana
v.
Ulysses Edgar PIERRE, Jarvis Roy Ballard, and Sidney G. Williams.
No. 99-KA-3156.
Court of Appeal of Louisiana, Fourth Circuit.
July 25, 2001.
Rehearing Denied September 6, 2001.
*900 John F. Rowley, District Attorney of St. Bernard Parish, Glenn E. Diaz, Walker H. Drake, Jr., Assistant District Attorneys of St. Bernard Parish, Chalmette, LA, Counsel for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant, Sidney G. Williams.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant, Jarvis Roy Ballard.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, Counsel for Defendant/Appellant, Ulysses Edgar Pierre.
Court Composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, and Judge MAX N. TOBIAS, Jr.
TOBIAS, Judge.
On 21 January 1998, Ulysses Edgar "Noon" Pierre ("Pierre"), Jarvis Roy Ballard ("Ballard"), and Sidney G. "Bird" Williams ("Williams") were indicted for aggravated rape, violations of La. R.S. 14:42. Each of the defendants pleaded not guilty. The defendants filed motions for discovery, motions to suppress statements, motions to suppress identification, and motions to suppress evidence. Hearings were conducted on 21 April 1998, 18 May 1998, and 3 August 1998. The court denied the motions.
The State filed a motion to obtain DNA, blood, and saliva samples, which was *901 granted. Ballard and Pierre filed motions to have their clothes tested for the presence of pepper spray, which were granted. The results were negative. The State also filed a motion for handwriting exemplars from Ballard and Pierre.
On 21 July 1999, following a three-day trial, a jury found Ballard and Pierre guilty as charged. On the following day, Williams was tried by a jury and found guilty as charged.
Ballard filed a motion for new trial based on the composition of the grand jury and the selection of the grand jury foreman. Pierre filed a motion for new trial and a motion for post verdict judgment of acquittal based on the sufficiency of the evidence, to which Williams and Ballard joined orally. All motions were denied.
The court sentenced all three defendants to life in prison without benefit of parole. All defendants moved for reconsideration of sentence, which motions were denied. This appeal followed.

STATEMENT OF FACTS
On 10 January 1998 the victim, a sixty-year old woman, N.D.[1], was babysitting her three-year old grandson at her home in Violet, Louisiana. The two were sleeping when the victim was awakened by a knock at the door. Thinking it was her son coming for N.D.'s grandson, the victim opened the door only to be greeted by a stranger. The stranger, whom she identified as Ballard, shoved the door pushing her back into the house. Ballard was followed into the residence by a second perpetrator, whom N.D. identified as Pierre. The three proceeded into the bedroom where the baby was sleeping. Ballard instructed Pierre to hold the victim, and he grabbed her from behind choking her. The victim struggled to free herself and fell to the floor. Ballard interrogated the victim regarding the location of her valuables and the location of an alleged safe. She told them that she did not have any money, only credit cards and to take them. She also told them that she did not have a safe. Ballard began ransacking the bedroom in an attempt to locate valuables, and then told Pierre to rape the victim. Pierre complied and vaginally raped her. The victim noted that the light was on in the room and that she could see both Ballard and Pierre without any difficulty. Indeed, when Pierre raped her, she was on her back, and Ballard was standing over the bed holding a pillow as if prepared to smother her.
Subsequently, the child began to stir and the victim comforted him. The victim believed that the perpetrators had not previously been aware of the child's presence. The defendants then began going in and out of the room. Ballard then had the victim get on her knees and he raped her anally from behind. The defendants continued to ask her about the safe and if she had any money, guns or drugs. One of the defendants had her get on her knees and he inserted his hands into her vagina as if to see if she was hiding something. Up to this point, the victim had a full view of Ballard and Pierre; then a third subject entered the room and told her not to look at him and placed his penis in her mouth and had her perform fellatio. They attempted to bind her hands with an electrical cord. While on the bed face down, a second incidence of sodomy occurred, and the victim noted a different voice. The victim was then forced into a closet. She heard the child cry out. She came to his aid, when Williams, she believed, pushed her down on the bed, retied her hands, and placed a pillowcase over her head. Subsequently, Williams, she believed, reentered *902 the room and placed something hard against her head, saying he was going to have to kill someone and told her that he was going to count to three and she was going to tell him where the safe was. He said "one", and she continued to tell him that she did not have a safe. After "two", she remained silent. The victim believed he was finally convinced. Subsequently, the victim heard her stereo equipment being pulled out and then no more sounds. She called 911 and her son. The police arrived as well as an ambulance that took her to the hospital.
The victim also related that during the attack, Pierre pulled the ring from her finger, lacerating it, after she could not get it off. The victim believed that the entire incident lasted twenty-five minutes.
Following her examination at the hospital, the victim gave a statement to the police and identified Ballard and Pierre from photographic lineups.
Yolanda Caesar, a neighbor, testified that on the night in question she was at home sleeping when she was awakened by Pierre at her door at approximately 1:00 a.m. Pierre requested to see her son, but because of the late hour, she declined Pierre's request. Shortly thereafter, Ms. Caesar, finding her encounter with Pierre strange, looked out of the window and observed an automobile with the figure of a girl seated in the vehicle. Then she observed Pierre run from the victim's house and put something in the vehicle. Realizing something was going on, she awakened her son, Louis Caesar, to have a look. At her son's request, she telephoned the police and reported what she believed to be a burglary in progress at the victim's house.
Louis Caesar testified that after being awakened by his mother, he observed a subject carrying items back and forth to the vehicle, whom he presumed was Pierre because of a red sweatshirt he was wearing and because his mother had identified him. Furthermore, he observed a total of three people leave the victim's house. He was not able to identify anyone else though, as they had their jackets pulled up over their heads.
Detective Scott Davis of the St. Bernard Sheriff's Office testified that he took a statement from Ballard wherein Ballard admitted going to the victim's house at the request of his two co-defendants to commit a robbery. In callous language, Ballard further admitted having non-consensual intercourse with the victim, but claimed he did not ejaculate.
Officer Albert Calvin of the St. Bernard Sheriff's office testified that at about the same time that Ballard was giving his statement, he took a voluntary statement from Pierre. The statement was introduced into evidence. In it, Pierre admitted raping and robbing the victim. He also admitted hiding the stolen property behind the house of Tracy Richard.
Officer John Graf of the St. Bernard Parish Sheriff's Office testified in Ballard and Pierre's trial that at the direction of Detective Davis he obtained a search warrant for the residence of Tracy Richard and located in the shed behind the residence stereo speakers, a cassette player, and a CD player belonging to the victim. He further testified that he recovered a ring belonging to the victim at Quandreka Ballard's[2] house.
Ballard called Detective Ray Whitfield, who testified that the affidavit executed in connection with the arrest warrant for Pierre stated that the victim reported that she was assaulted by two perpetrators. *903 Detective Whitfield further testified that when he interviewed the victim approximately two weeks after the crime, she felt that three subjects were involved and that she recalled three distinct voices. Detective Whitfield further testified that Williams denied in his statement to police that Ballard was involved. At Williams' trial, Whitfield testified that Williams turned himself in and gave a voluntary statement admitting that he participated in the robbery, but claiming that he did not rape the victim.
Julie Golden, an expert in DNA analysis, among other things, testified in Ballard and Pierre's trial that sperm samples collected from the scene matched Pierre. She stated that the chance that someone else from the African American population would share the same profile as Pierre was one in 1.8 million. In Williams' case, she testified that he was included as a possible source of the DNA recovered from one of the samples, while 98.5% of the population would be excluded.
Ballard testified in his own defense that he made the statement in question to the officer, but that he was coerced into giving it. He stated that he was kicked in the groin and verbally intimidated. As to the contents of the statement, he claimed that Detective Davis provided him with the facts. Ballard did admit that the portion of his statement that Pierre and Williams approached him to "hit" a house nearby did occur, but he declined. He also stated that Williams was his sister's boyfriend and that Tracy Richards was his sister's friend. Ballard introduced medical records from an operation to repair a hernia after he was incarcerated. Ballard admitted that the records do not reflect that he related that he had been kicked.
Ballard's mother, Linda Ballard, testified that her son came home that evening from a party between 12:30 or 1:00 a.m. She stated that she checked on him at 1:30 a.m. when she went to the bathroom. She also stated that she checked on him between 2:00 and 2:30 a.m. and again between 3:00 and 3:30 a.m. when James Haynes, who lived with her, left the house to go to work. She also related that Pierre is her nephew.
James Haynes, called by the defense, testified that he left the house to go to work at approximately 1:00 a.m. He stated he could not have left as late as 3:00 a.m.
The State introduced a 911 log, which reflected that Yolanda Caesar called at 2:55 a.m.

ERRORS PATENT
Ballard filed a motion for new trial and joined Pierre's motion for new trial and motion for judgment of acquittal. The trial court denied Ballard's motions on the same day the court sentenced defendant. La.C.Cr.P. art. 873 requires a twenty-four hour delay between the denial of a motion for new trial and sentencing, unless the defendant waives such delay. A defendant may implicitly waive the waiting period for imposing sentence by announcing his readiness for the sentencing hearing. Here, defendant impliedly waived the required twenty-four hour delay when defense counsel responded in the affirmative when the trial judge inquired whether he was ready for sentencing. State v. Jefferson, 97-2949, p. 4 (La.App. 4 Cir.1999), 735 So.2d 769, 772.[3]
Additionally, Williams contends that the trial court's failure during sentencing to give him credit for time served is an error patent. La.C.Cr.P. art. 880 *904 currently provides that a defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. Accordingly, a defendant shall receive credit for time served by operation of law, and a trial court's failure to so note is not error. State v. Santinac, 99-0782 (La.App. 4 Cir. 6/14/00), 765 So.2d 1133.

ASSIGNMENT OF ERROR NO. 1, WILLIAMS

ASSIGNMENT OF ERROR NO. 2, BALLARD
Williams and Ballard contend the evidence was insufficient. The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
Williams contends the State failed to establish beyond a reasonable doubt that he raped the victim. While Williams concedes he was present at the time of the rape, he contends that the State failed to establish that the victim was raped by a third person or that he was the third person. He reasons that because the victim could not identify him, his guilt was unsupported. Indeed the victim's testimony was that she could not identify her third assailant because she was denied the opportunity to actually see him.
In Williams' voluntary statement, he admitted being present during the home invasion along with Pierre; however, he denied that Ballard was present. Williams concedes that it is "undisputed" that the victim was "raped by two persons," but suggests the evidence failed to show that she was raped by a third person. (Interestingly, because the Williams' statement was that only he and one other person were present in the victim's home, Williams unintentionally presents a compelling case that he was the second rapist.) In essence, Williams' argument is essentially that the jury should have dismissed the portion of his statement that only he and Pierre were present, and the jury should have accepted the portion of his statement that he did not participate in the rape. For not doing so, Williams contends the jury's verdict is unreasonable.
In addition to the failed logic of Williams' assignment, the record reflects sufficient evidence was presented for a reasonable jury to conclude that the victim, was raped by three people, and that the third person was Williams. The victim testified that she had no doubt she heard three distinct voices during the attack, and that the third person stayed out of her sight. Furthermore, she also testified that at one point a person, the third voice, came into the room and demanded and even screamed that she not look at him. This is important as during the initial stages of the attack, neither Ballard nor Pierre made any attempt to conceal their identity. The victim testified further that she was certain that this perpetrator had a different voice from Ballard or Pierre. Additionally, the forensic DNA evidence introduced established a very high probability that Williams was the source of genetic material left at the crime scene.[4]
Ballard claims the evidence was insufficient in establishing he was a perpetrator in the first place. He contends that the evidence was insufficient in light of the *905 fact that (1) no forensic evidence linking him to the crime scene was presented; (2) the photograph utilized in the photographic line-up was dark and blurry; (3) the confession was coerced; (4) the Caesars only observed two male perpetrators; (5) the victim's testimony that she was assaulted by three perpetrators was not to be believed; and (6) his mother testified he was at home when the crime was committed.
Regarding the photographic lineup from which Ballard was identified, Ballard does not contend that the trial court erred in denying the motion to suppress the identification, and regardless of the quality of the photograph, the victim positively identified Ballard in court.
As to the alleged coerced confession, Ballard does not contend that the State failed to establish that the statement was freely and voluntarily made,[5] or that the trial court erred in denying the motion to suppress the confession. Ballard merely notes that he alleged that he was kicked in the groin and maced by the police prior to giving his statement, and further that the police provided him with the details of the crime. The jury heard from both Ballard and the officer who took the Ballard's statement. The jury's decision to reject Ballard's story and find that the statement was voluntary was a credibility determination, which cannot be set aside by this court. Additionally, Ballard does not suggest how the medical records from his hernia operation support his assertion of being coerced into giving the statement.
The fact that the victim initially told the police that she was assaulted by two people has little to do with Ballard's conviction. He was positively identified by the victim. Furthermore, Louis Caesar testified that he observed three males exit the house.
Regarding Ballard's alibi defense, the testimony offered at trial by Haynes conflicts sharply with the testimony of Ballard's mother. In light of the inconsistency between the two, it was not unreasonable for the jury to discount the alibi testimony.

ASSIGNMENT OF ERROR NUMBER 1, PIERRE

ASSIGNMENT OF ERROR NUMBER 2, WILLIAMS

ASSIGNMENT OF ERROR NUMBER 3, BALLARD
All three defendants contend that the sentences imposed are excessive. Ballard and Pierre suggest that the statutory imposition of a mandatory life sentence for all aggravated rapes is disproportionate and that, because the circumstances in this case warrant a less onerous sentencing alternative, the sentences are excessive. Stated simply, the argument is that not all aggravated rapes are as serious an offense as any murder, the only other crime which carries a mandatory life sentence, and that in this case they did not commit the most serious instance of aggravated rape.
The defendants contend that because the aggravating element in the instant case arose from the fact that more than one person participated in the crime, rather than through the use of a deadly weapon for instance, the sentence is disproportionate and excessive. The defendants contend that had they committed the same conduct alone, they would only be subject to the less severe penalties for forcible rape.[6] Assuming, that the defendants *906 are correct in the assumption that acting alone, their conduct falls under the lesser included offense of forcible rape, their argument operates under the assumption that the sum of their actions is equal to their individual parts, and could be stated by drawing on the analogy of three perpetrators each stealing merchandise valued at less than five hundred dollars, but whose aggregate value exceeds five hundred dollars. The inclusion of two or more perpetrators as a circumstance encompassing aggravated rape is within the broad authority that the legislature possesses in determining the type and limit of punishment for a particular crime. Clearly, the legislature made a determination that the addition of one or more perpetrators impacts the seriousness of the crime because it severely increases the potential harm suffered by the victim.
In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court set forth three objective factors to guide reviewing courts in determining whether a sentence is cruel, unusual, and excessive under the Eighth Amendment of the United States Constitution as follows: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentence imposed for commission of the same crime in other jurisdictions. The Supreme Court of Louisiana addressed the constitutionality of a mandatory life sentence for a fifteen year-old convicted of aggravated rape in State v. Foley, 456 So.2d 979 (La.1984), and, after applying the Solem v. Helm factors, found that the defendant's life sentence was not disproportionate to his crime or excessive by either the United States or Louisiana Constitutions.
Furthermore in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the United States Supreme Court modified Eighth Amendment standards in favor of the States. The Court held that the Solem v. Helm analysis was only required in cases where the sentence imposed was "grossly disproportionate" to the offense.
In the case at bar, the life sentences are not grossly disproportionate to the crime. Not only did the defendants commit this crime in the victim's own home, a place to which she has never returned since this *907 incident, but they also knowingly committed their crimes in the presence of a three-year-old child. The victim was raped and sodomized repeatedly, forced to perform fellatio, choked nearly to the point of asphyxiation, and bound and had her head placed in a pillowcase. She was threatened with death at the count of "three". Furthermore, the victim was prevented from resisting or attempting to flee by the presence of her grandchild. Considering these facts, the defendants' sentences do not even remotely shock one's sense of justice, nor are they excessive or disproportionate to the offense committed.

ASSIGNMENT OF ERROR NUMBER 1, BALLARD
In his first assignment of error, Ballard raises an equal protection challenge to the selection of the grand jury foreman, and thus to the composition of the grand jury which indicted him. See, Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 1422, 140 L.Ed.2d 551 (1998). Ballard further challenges the composition of the petit jury venire that convicted him.
Although cognizant that an equal protection claim based upon the discriminatory selection of the grand jury foreman is barred if the defendant fails to file a pretrial motion to quash,[7] Ballard nevertheless contends that the issue was preserved for review when he raised the issue in his motion for new trial, and when he objected to the composition of the petit jury venire. The filing of a post verdict motion for new trial is not sufficient to preserve the issues for appeal for the claim was waived by failing to file a timely motion to quash. Additionally, objecting to the composition of the petit jury venire does not preserve the issue because the objection does not relate to the composition of the grand jury.
Ballard further requests that the case be remanded in order that he may present evidence in this regard. Because the issue has not been preserved for appeal, the request must be denied.
Regarding Ballard's challenge to the composition of the petite jury venire, he contends that a disproportionately small number of black jurors were in the venire, allegedly because of unexplained absences.
Of the 54 prospective jurors who were questioned before a panel of twelve and an alternate were selected, five were black.[8] The record does not reflect the number or composition of the entire venire. In entering the objection, the following colloquy occurred:
By Mr. Cuccia: At this time, again, I move for a mistrial. There were 300 jurors called to appear and although I didn't keep a tally, a great number simply were not here. That affects the random selection of jurors and Mr. Ballard's fair cross-section of the community. (Counsel for Ulysses Pierre, Mr. Stierwald joined in the objection)
* * *
By The Court: Numbers do not necessarily require a mistrial. It does require a cross-section. Listening to all the addresses in the community indicated by prospective jurors, we had black, white, Filipino jurors. I believe that it is an accurate cross-section. I think that the number itself is not the only determining factor and I deny *908 the request as being without merit from Mr. Cuccia. I note the exception of Mr. Cuccia and Mr. Stierwald.
La.C.Cr.P. art. 419 provides "[a] general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." The defendant bears the burden of proving "fraud or that some irreparable injury was caused by the selection process." State v. Bourque, 622 So.2d 198 (La.1993). Ballard has failed to shoulder even a colorable claim regarding the composition of the jury venire.
Ballard further requests, that the case be remanded in order to allow him an opportunity to present evidence to further substantiate his claim. The record reflects that Ballard did not raise this issue in his motion for new trial. Accordingly, the request for remand must be denied.

CONCLUSION
The convictions and sentences of Pierre, Ballard and Williams are affirmed.
AFFIRMED.
NOTES
[1] We have deleted the victim's name and refer to her only by her initials.
[2] Quandreka Ballard is Ballard's sister.
[3] The trial court issued a minute entry on 8 August 2000, to the effect that it had denied Pierre's and Williams' motions prior to sentencing them.
[4] We note that in the first trial the victim did not recount being raped a third time. Additionally, in the second trial the victim did not recount being forced to perform fellatio.
[5] See, La. R.S. 15:541; State v. Comeaux, 514 So.2d 84 (La.1987).
[6] The defendants were charged under La. R.S. 14:42, which provides in pertinent part that an aggravated rape is committed under one or more of the following circumstances:

(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
* * *
(5) When two or more offenders participated in the act.
* * *
B. For purposes of Paragraph (5), "participate" shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
La. R.S. 14:42.1 provides that a forcible rape is committed under one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other controlled dangerous substance administered by the offender and without the knowledge of the victim.
The defendants do not contest the sufficiency of the evidence with regard to the establishment of the elements of aggravated rape.
[7] La.C.Cr.P. arts. 533(1) & 535(D); Deloch v. Whitley, 96-1901 (La.11/22/96), 684 So.2d 349.
[8] The State notes that as alleged by Ballard the venire had a higher percentage of black jurors (9.25%) than the percentage of the total black population over the age of eighteen of St. Bernard Parish (6.5%) from the 2000 census.