ROLAND L. BELSOME, Judge.
 

 11 Defendant Earl Payne, Jr. appeals his manslaughter conviction and his fifteen-year sentence, requesting only a review of the record for errors patent. Because such review finds no error, we affirm Payne’s conviction and sentence and grant his counsel’s motion to withdraw.
 

 FACTS AND PROCEDURAL HISTORY
 

 Earl Payne, Jr. was indicted on January 17, 2008 with the second degree murder of Joseph Robinson. He pled not guilty to this charge at his arraignment on January 24.
 
 [1]
 
 On April 30, 2008, at the close of a two-day trial, a twelve-person jury found Payne guilty of the responsive verdict of manslaughter. The State subsequently filed a multiple bill charging Payne as a second offender, and Payne pled not guilty to the bill and moved to quash it. The court quashed the bill on July 11, 2008. On August 5, 2008 the court sentenced Payne to serve fifteen years at hard labor. The court denied his motion to reconsider sentence and granted his motion for appeal.
 

 
 *519
 
 The body of Joseph Robinson was found lying in an alleyway behind a large building that encompassed the 3500 block of General Meyer Avenue. At trial, Dr. 12Paul McGarry, the forensic pathologist who conducted the autopsy of Robinson, testified that Robinson sustained massive compressive scraping injuries from the side of his head and down the side of his face, onto his neck and chest. Dr. McGar-ry further testified that Robinson’s chest had been crushed in; his ribs were broken in forty places, with ten ribs fractured on each side twice; he sustained deep abrasions on the right side of his body and his back; a fractured right thigh bone; he had a large incision from his breastbone to his pelvis, exposing his internal organs; he sustained fractures and a deep gouging injury in the left leg, and scraping injuries down his left arm out to his hand. Additionally, Dr. McGarry testified that several of Robinson’s internal organs had been punctured by his broken ribs, including his lungs, his liver, and his intestines; his spleen had been removed; his spinal cord was crushed, as was his pelvis; and his lungs were filled with fluid and surrounded by blood. Dr. McGarry concluded that all of Robinson’s injuries were consistent with being rolled against rough surfaces and crushed; he agreed the injuries were consistent with having been hit by an automobile and crushed against another surface. Robinson never regained consciousness and died several days after the incident.
 

 Sgt. Kevin Guillot of the New Orleans Police Department testified that he received a call about the incident at approximately 1:00 p.m. on November 12, 2007, and because he was in the vicinity, he was the first police officer to arrive. He testified that the call indicated that a possible attempted armed robbery, and that when he did not see anything unusual in the 3500 block of General Meyer Avenue, he turned down Flanders Street and drove to the alley, at which time he observed the defendant Earl Payne, Jr. standing next to a maroon van, waving to him. Sgt. Guillot testified that he stopped and exited his car and walked down the Lalley to Payne. He stated that he saw Robinson lying on the ground next to a bicycle, and described both Robinson and the bicycle as “pretty badly mangled.” He testified that Payne told him that Robinson had tried to rob him with a gun, and he had struck Robinson with his van. Sgt. Guillot stated that when he questioned Payne about the gun, Payne said that Robinson threw it somewhere in the alley before Payne hit him with the van.
 

 Sgt. Guillot further testified that because Robinson was convulsing as he lay on the ground, he called for EMS assistance and officer assistance. He also notified the police dispatcher about the possible armed robbery. He stated that Payne did not mention to him that he knew Robinson. He testified that other officers soon arrived and began looking for the gun, but no gun was found. Sgt. Guillot testified that he did not immediately advise Payne of his
 
 Miranda
 
 rights because at the time he spoke with him he believed that Payne was the victim of an attempted armed robbery. He then supervised the scene when the other officers arrived.
 
 [2]
 

 Officer Ryan Aucoin of the New Orleans Police Department, who also responded to the broadcast, described the 3500 block of General Meyer Avenue as holding a large building that contained various offices, and the block was bounded by Michael and Flanders Streets. He testified that a service alley ran behind the 3500 block of General Meyer, and that he was directed to the alley, where he found a maroon van
 
 *520
 
 parked, which was the only vehicle in the alley at that time. Officer Aueoin observed Robinson lying on the ground with his head toward a damaged fence, and his feet were toward the damaged bicycle.
 

 |4Officer Aueoin further testified that he and other officers looked for the gun that Payne described, searching the alley, the yards along the alley, a shed, dumpsters, and even the roof of a building, but they could not find a gun.
 
 [3]
 
 He testified that they also contacted the ATF, which dispatched a canine trained in finding gunpowder and firearms a week subsequent to the incident, but no gun was found.
 
 [4]
 
 Officer Aueoin also described an oil puddle on the ground and an oil trail that led down the alley from where Robinson was found, and identified the clothing collected from Robinson.
 

 Officer Stuart Smith of the New Orleans Police Department similarly testified that he responded to Sgt. Guillot’s broadcast concerning the incident. Officer Smith observed the van, the damaged bicycle and fence, and Robinson, who was unresponsive. He further testified that, in initially speaking with Payne about the incident, he did not advise him of his
 
 Miranda
 
 rights because he believed that Payne was the victim of an attempted armed robbery.
 

 Officer Smith further testified regarding Payne’s account of the events leading up to the incident. Payne advised him that he had been sitting in his van with his door open in the parking lot of the building on General Meyer when Robinson came up to him on the bicycle and instigated an argument regarding a mattress set that Robinson had purchased from Payne for thirty-five dollars. Officer Smith stated that Payne recalled Robinson becoming extremely agitated and producing a gun from his waistband, threatening to “f — up” Payne, but did not point the gun directly at him. Payne told Officer Smith that he closed the door and | r,drove away, and Robinson began riding down the alleyway, holding the gun in one hand; Payne subsequently turned around and pursued Robinson down the alley, hitting him with the van. Payne’s statements to Officer Smith were not recorded; Officer Smith’s testimony was based on his handwritten notes.
 

 Detective Kevin Bell of the New Orleans Police Department testified that he also spoke with Payne on the scene, and was under the initial impression that Payne was the victim. Detective Bell stated that Payne explained that he and Robinson had an ongoing dispute over the money Robinson paid for the mattress set, and that during the argument in the alley regarding same, Robinson produced a gun and demanded his money back. Payne advised Detective Bell that Robinson rode off with the gun before throwing it away. Detective Bell testified that when he realized that Robinson was riding away at the time Payne hit him with his vehicle, he stopped Payne’s recitation of the facts and advised him of his
 
 Miranda
 
 rights. Payne nevertheless continued the recitation, stating that he lost sight of Robinson and drove down the alley to find him, admitting that he used his van in an attempt to pin Robinson against the fence. Detective Bell testified that Payne explained that after hitting Robinson with his vehicle, he drove
 
 *521
 
 out the alley, circled the block, and returned to see if he could help Robinson.
 

 After speaking with Payne about the incident, Detective Bell had Payne arrested for aggravated battery and transported back to the police station, at which time he was again advised of his
 
 Miranda
 
 rights. Detective Bell described Payne’s demean- or at the police station as extremely nervous, but indicated that Payne was cooperative with the officers. At the station, Payne signed a waiver form and gave a recorded statement, which was played for the jury. Detective Bell testified that in making his statement, Payne mentioned prior incidents that had occurred with | (¡Robinson. Payne insisted that he only intended to pin Robinson against the fence with his van. Detective Bell testified that when Robinson died six days later, Payne was re-arrested for second degree murder.
 

 Patricia DeGruy testified that she was Payne’s girlfriend of ten years and also the mother of his child. Ms. DeGruy testified that she knew Robinson from the neighborhood, and she and Payne sold him a mattress set that was the cause of bad feelings between them. She further testified that Robinson had threatened her in the past at his daughter’s house; that Robinson had accosted her with a handgun in the front of his pants at a grocery store on one occasion; that on another occasion, when she was picking up his neighbor, he came out of his house brandishing a handgun; and that Robinson had previously slashed the tires on her car. She testified that she called the police on one occasion regarding Robinson’s behavior, but because she did not know his last name at that time, no arrest was made.
 

 Ms. DeGruy further testified that on the day of the incident, Payne .had driven her and several of her children to the scene, and she and the children went inside a nearby drug store. She stated that they had been inside for five or six minutes when Payne knocked on the door, telling them that he needed a phone to call the police, and that he used her daughter’s phone to call the police. Ms. DeGruy admitted that she did not know what happened in the alley.
 
 [5]
 

 Simon Taylor testified that he lived at 1349 Terry Street, which was located directly behind the 3500 block of General Meyer Avenue, so that his back yard | ^bordered the alleyway. He testified that on the afternoon of November 12, 2007, he heard a car coming down the alley at a fast rate of speed, then heard something hit the wooden fence that bordered his yard. Taylor stated that he went through his gate into the alley, and he observed that his fence had been hit and Robinson lying down in the alley; he saw no one else in the alley. Taylor called 911 and waited at the front of his house to meet with emergency personnel and guide them to Robinson. Taylor further testified that firefighters were the first to arrive on the scene, and when he brought them to Robinson, he observed a maroon van parked in the alley and a policeman speaking with its driver. Taylor also observed officers in the alleyway and searching yards near the alley.
 

 DISCUSSION
 

 MOTION TO WITHDRAW
 

 In this case, Counsel for Payne filed a brief pursuant to
 
 Anders v. California,
 
 386 U.S. 738, 87 S.Ct. 1396, 18
 
 *522
 
 L.Ed.2d 493 (1967), and moved to withdraw. In so doing, Counsel has complied with the procedures outlined by
 
 Anders, supra,
 
 and by this Court in
 
 State v. Benjamin,
 
 573 So.2d 528 (La.App. 4 Cir.1990). “[I]f counsel finds [the] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.”
 
 Benjamin,
 
 573 So.2d at 529 (quoting
 
 Anders v. California,
 
 87 S.Ct. at 1400). Additionally, Counsel filed a brief in compliance with
 
 State v. Jyles,
 
 96-2669 (La.12/12/97), 704 So.2d 241 (requiring “a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place”).
 

 |8Counsel avers that after a conscientious and thorough review of the record, no non-frivolous issue exists for appeal. Counsel further indicated that she reviewed available transcripts and found no trial court ruling that arguably supports the appeal. In this case, Counsel forwarded a brief detailing the facts of the case, the procedural history, and a summary of the evidence presented at trial, noting the infrequent number of objections or calls for evidentiary rulings. Counsel’s brief additionally requested an error patent review by this Court. Therefore, we find that Counsel conducted a detailed and thorough review of the record and complied with
 
 State v. Jyles,
 
 as Counsel’s brief set forth “a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place.”
 
 State v. Jyles,
 
 96-2669 (La.12/12/97), 704 So.2d 241 (quoting
 
 State v. Mouton,
 
 95-0981, p. 2 (La.4/28/95), 653 So.2d 1176, 1177);
 
 see also State v. Allen,
 
 2008-0533, pp. 3-4 (La.App. 4 Cir. 11/19/08), 999 So.2d 1163, 1165.
 

 ERROR PATENT REVIEW
 

 A copy of counsel’s brief was forwarded to Payne, and this Court informed him that he had the right to file a brief in his own behalf. Because Payne has failed to do so, this Court’s review is limited to errors on the face of the record pursuant to La.C.Cr.P. art. 920.
 
 [6]
 

 Pursuant to
 
 State v. Benjamin,
 
 573 So.2d at 529, this Court performed an independent, thorough review of the pleadings, minute entries, bill of information, and transcripts in the appeal record. The record in this case evidences that Payne |9was properly charged by bill of indictment with second degree murder in violation of La. R.S. 14:30.1, and the bill of indictment was signed by the foreman of the grand jury. Payne was present and represented by counsel at arraignment, during trial, and at sentencing. The record evidences that Appellant received diligent advocacy from Counsel. The jury’s verdict and Payne’s sentence are legal in all respects. Furthermore, a review of the trial transcript demonstrates that the State provided sufficient evidence to prove beyond a reasonable doubt that Payne was guilty of manslaughter, the responsive verdict returned by the jury.
 

 Our independent review reveals no non-frivolous issue and no trial court ruling that arguably supports the appeal. Additionally, a review of the record reveals no patent errors. Therefore, Earl Payne, Jr.’s conviction and sentence are hereby
 
 *523
 
 affirmed, and counsel’s motion to withdraw is granted.
 

 AFFIRMED; MOTION GRANTED.
 

 [1]
 

 . The trial court denied Payne's motion to suppress the statement on April 24, 2008.
 

 [2]
 

 . Robinson was transported to University Hospital.
 

 [3]
 

 . Officer Aueoin testified that although he did not speak with Payne, Payne related to the other officers that Robinson had pulled a gun and tried to rob him, and then got on his bicycle, still holding the gun, and rode down the alley, at which time Payne struck Robinson with his van.
 

 [4]
 

 . Officer Aueoin testified that during the area was not secured during the week that elapsed after the incident.
 

 [5]
 

 . Cindy Woods, the custodian for the 911 calls received concerning the incident, testified that two calls were received concerning the incident, one of which was from Payne, who was listed as the complainant because his call was received first. She testified that during the call, Payne said a man had pulled a gun on him. The State played the 911 tape for the jury.
 

 [6]
 

 . The following matters and no others shall be considered on appeal:
 

 (1) An error designated in the assignment of errors; and
 

 (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
 

 La.C.Cr.P. art. 920.