TERRI F. LOVE, Judge.
hDoraella Banks (“Ms. Banks”) and her codefendant, Julius Celestain (“Mr. Celes-tain”) appeal their conviction and sentence of distribution of cocaine in violation of La. R.S. 40:967(A)(1).[1] Counsel for Mr. Celes- *877 tain filed an appellate brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) requesting a review for errors patent and granting of his motion to withdraw. On appellate review, we find two patent errors as to Mr. Celestain’s sentencing including: (1) the trial court’s failure to observe the twenty-four hour delay mandated by La. C.Cr.P. art. 873; and (2) the trial court’s failure to indicate that his sentence was to be served “without benefit of parole, probation, or suspension of sentence.” Pursuant to Louisiana jurisprudence, however, we find reversal is not required. Therefore, we grant counsel’s motion to withdraw and affirm Mr. Celestain’s conviction and sentence. Additionally, Ms. Banks assigns 12as errors that the evidence is insufficient to uphold her conviction and that the trial court imposed an excessive sentence. We find the evidence presented to the jury is sufficient to uphold Ms. Banks’ conviction. We also find that Ms. Banks’ sentence was not excessive in that her sentence was well-within the sentencing range and there was adequate factual basis for the sentence imposed. Accordingly, we also affirm the conviction and sentence of Ms. Banks.

PROCEDURAL HISTORY

In October 2011, Ms. Banks and Mr. Celestain were charged by bill of information with one count of distribution of cocaine, a violation of La. R.S. 40:967(A)(1). In March 2012, a preliminary hearing was held in addition to a hearing on both defendants’ motions to suppress evidence. The trial court denied the motions and found probable cause to substantiate the charges. At the conclusion of a two-day trial in October 2012, a jury found both defendants guilty of one count of distribution of cocaine. Mr. Celestain was sentenced to three years in the Department of Corrections with one year suspended and credit for time served with a special condition that Mr. Celestain participate in the Blue Waters Substance Abuse Program. Ms. Banks was sentenced to seven years and six months in the Department of Corrections, with three years and six months suspended and credit for time served. The trial court further ordered that following Ms. Banks serving the executory portion of her sentence, she was to be placed on probation and ordered to pay $1,000.00 to the “Criminal Court Fund.”
|sMr. Celestain filed a motion for post-verdict judgment of acquittal and Ms. Banks filed a motion for new trial, or in the alternative, a motion for post-judgment verdict of acquittal or a finding of guilty of a lesser included offense. The trial court denied the motions at the sentencing hearing. Additionally the State filed a multiple bill as to Mr. Celestain. In April 2013, Mr. Celestain filed a motion for downward departure from the statutory minimum as to the multiple bill.[2] Mr. Celestain and Ms. Banks filed motions for appeal which the trial court granted; their timely appeal follows.

*878
FACTUAL BACKGROUND

The following factual background is based on the State’s testifying officers as neither Mr. Celestain nor Ms. Banks called any witnesses at trial.
Detective Glenn Washington’s Testimony
In early October 2011, Detective Glenn Washington (“Detective Washington”), an eight-year veteran of the New Orleans Police Department (“NOPD”) and a member of the Fourth District Task Force, was working in an undercover capacity, traveling southbound on St. Ann Street in New Orleans when he observed a male who was later identified as Julius Celestain. Detective Washington initiated contact with Mr. Celestain, asking whether he knew where he could purchase any “hard” (a street term for crack cocaine). Mr. Celestain indicated he did, and entered the passenger side of the vehicle. Detective |4Washington continued down St. Ann Street towards Broad Street while negotiating with Mr. Celestain to purchase forty dollars’ worth of crack cocaine. Mr. Celes-tain spoke with a male on his cellular phone and directed Detective Washington to a location at the corner of St. Peter and Dorgenois Streets.
After Detective Washington parked near the corner, Mr. Celestain exited the vehicle and walked into a “location”; however, Detective Washington could not see which “location” Mr. Celestain entered. About two minutes later, Mr. Celestain returned to the vehicle and indicated that he was unsuccessful in purchasing crack cocaine at that location. Mr. Celestain then directed Detective Washington to a location under Interstate 10 at the intersection of Claiborne Avenue and St. Philip Street.
After parking under the interstate, Mr. Celestain exited the vehicle and walked southbound. He began speaking with another individual in a maroon Chevrolet Impala with Texas plates that was positioned about fifteen to twenty feet away from Detective Washington’s surveillance vehicle. Detective Washington observed Mr. Celestain through the back window of his vehicle, and although he could not identify the individual in the Impala, Detective Washington testified that the individual was later arrested and identified as Dora-ella Banks. A few minutes later, Detective Washington observed Mr. Celestain extend his hand inside the driver’s side window of the Impala, close his hand immediately thereafter, and proceeded directly back to the surveillance vehicle. As Mr. Celestain walked back to Detective Washington’s vehicle, he did not put the hand he had placed inside the | Jmpala into his pocket or up to his mouth. Mr. Celestain entered the passenger side of the vehicle and handed Detective Washington “several off-white rocklike objects” which he “immediately recognized ... to be consistent with crack cocaine.” Mr. Celestain advised the detective that the person in the car was his “girl” and that “[he] got [the crack] from her” and that “[s]he’s sitting in the ear [that Mr. Celestain approached].”
Detective Washington testified that he handed Mr. Celestain two NOPD Expense Fund twenty-dollar bills, which he accepted. Before exiting the vehicle, Mr. Celes-tain asked Detective Washington for one of the pieces of crack cocaine, and Detective Washington refused. Mr. Celestain then walked back to the Impala, and Detective Washington could “clearly” see the two twenty-dollar bills in his hand. Detective Washington testified that Mr. Celestain walked to the driver door of the Impala, extended his hand into the driver’s side window, and removed his hand, at which time Detective Washington could no longer see the money in his hand.
Thereafter, Mr. Celestain returned to the detective’s vehicle and again requested *879 one of the pieces of crack cocaine that Detective Washington purchased. The detective testified that instead he gave Mr. Celestain a five-dollar bill. Immediately after, an individual who had been standing near the passenger door of the detective’s surveillance vehicle approached and said something to Mr. Celestain that Detective Washington could not hear. In response to the individual, Mr. Celestain said, “I see him.” Right after Mr. Celestain exited the vehicle, |fiDetective Washington observed the NOPD takedown units arrive at the scene and he remained in the area where Mr. Celestain was detained to positively identify him as the person from whom he purchased the crack cocaine.
After identifying Mr. Celestain, the detective drove away from the scene to a prearranged location for testing of the contraband by Detective Mike Dalferes (“Detective Dalferes”), who found it positive for the presence of cocaine. In addition to the crack cocaine, fifty dollars in cash was confiscated from Ms. Banks, and two twenty-dollar bills matched the bills from the NOPD Expense Fund that were photocopied before the transaction. In addition, Detective Washington testified that nineteen dollars[3] in cash was confiscated from Mr. Celestain, and a five-dollar bill included in the confiscated money matched the money from the NOPD Expense Fund.
Moreover, Detective Washington confirmed that the surveillance vehicle he drove the day of the incident had operating video and audio equipment that was used to record his conversations with Mr. Celestain. He also testified that Detective Derek Burke (“Detective Burke”) was following him in another surveillance vehicle for safety reasons and was listening to the conversation. A DVD recording of the events in the interior of the car was admitted into evidence and played for the jury.
17Petective Derek Burke’s Testimony
Detective Burke, employed by the NOPD for twenty-one years, fourteen of which were with the Major Case Narcotics Unit, was assigned to follow and observe Detective Washington’s surveillance vehicle. Detective Burke testified that his unmarked police vehicle was equipped with an audio device with which he could listen to the audio from Detective Washington’s vehicle. He first observed Mr. Celestain as he entered the front passenger seat of Detective Washington’s vehicle at the intersection of St. Ann and North Dupre Street. He next observed Detective Washington and Mr. Celestain stop at the intersection of North Dorgenois and St. Peter Street, at which time Mr. Celestain exited the vehicle and then returned to the vehicle. Detective Burke was aware that the narcotics transaction was not yet completed because he did not receive the prearranged signal from Detective Washington. Detective Burke observed the surveillance vehicle drive down St. Philip Street towards Claiborne Avenue before stopping.
Detective Burke testified that when Detective Washington’s vehicle stopped underneath the interstate, he parked his unmarked police car under the interstate also. From his unobstructed view, Detective Burke observed Mr. Celestain exit the passenger seat and approach a maroon Impala. He testified that no other individuals entered or exited the Impala during his observation. He then observed Mr. Celestain return to the surveillance vehicle and remained for a few minutes. Detective Washington gave the prearranged sig *880 nal that the narcotics transaction |¿was complete. At that time, Detective Burke directed the takedown units into the area via police radio, instructing the units to arrest Mr. Celestain and Ms. Banks. Officer Louis Faust’s Testimony
Officer Louis Faust (“Officer Faust”), a twelve-year NOPD veteran, participated in the narcotics investigation. On the date in question, Officer Faust was assigned to the Special Operations Division as a member of the SWAT team and takedown unit. Officer Faust testified that he received a call that his unit was to stop a “female in a red vehicle that was at the intersection of ... [St. Philip and Claiborne].” Arriving at the scene, Officer Faust observed a vehicle matching the description and asked the female inside the vehicle to step out, at which time he placed her in handcuffs. Officer Faust testified that no other individuals were in the maroon vehicle, nor did he see anyone enter or exit the vehicle.
Additionally, Officer Faust testified that fifty dollars was recovered from Ms. Banks’ front right pocket during the search incident to arrest, and fourteen dollars in cash was recovered from Mr. Celes-tain.

ERRORS PATENT AS TO MR. CELESTAIN

Counsel for Mr. Celestain filed an appellate brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) requesting a review for errors patent and a motion to withdraw.[4] Mr. Celestain’s counsel represents that “[t]here were very few objections by Mr. Celestain during trial and none which adversely affected his right to a fair trial.” Counsel further admits |a“[t]he evidence of [Mr. Celestain’s] guilt was first-hand testimony of the undercover officer which was substantiated by the video/audio recording of the transaction.” On appellate review, we find that counsel for Mr. Celestain complied with the requirements of State v. Benjamin, 573 So.2d 528, 529 (La.App. 4th Cir.1990) (noting that “if counsel finds [the] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.”) (quoting Anders v. California, 87 S.Ct. at 1400).
Pursuant to State v. Benjamin, counsel for Mr. Celestain performed an independent, thorough review of the pleadings, minute entries, bill of information, and transcripts in the appeal record. A review of the record evidences two errors patent with respect to Mr. Celestain. However, those errors do not require reversal. Mr. Celestain was present and represented by counsel at arraignment, during trial, and at sentencing, and the record evidences that he received “diligent advocacy” from counsel. See State v. Payne, 08-1557, p. 8 (La.App. 4 Cir. 7/1/09), 16 So.3d 517, 523. The State provided sufficient evidence to prove beyond a reasonable doubt that Mr. Celestain was guilty of the crime of distribution of cocaine. Accordingly, an independent review of the record evidences no non-frivolous issue for appeal with respect to Mr. Celes-tain. See State v. Scott, 08-0399, p. 3 (La.App. 4 Cir. 6/25/08), 988 So.2d 784, 786.
With regard to errors patent, a review of the record evidences that the trial court sentenced Mr. Celestain less than twenty-four hours after denying his motion |infor new trial. Thus, the trial court erred in failing to observe the twen *881 ty-four hour delay required by La.C.Cr.P. art. 873.
Pursuant to La.C.Cr.P. art. 873, a twenty-four hour delay between a denial of a motion for new trial and sentencing is required unless the delay is waived by the defendant:
La.C.Cr.P. art. 873 expressly requires a twenty-four hour delay between the denial of both a motion for new trial and a motion in arrest of judgment. In [State v.] Wilson, [404 So.2d 968 (La.1981) ], this court held that a trial court’s failure to delay sentencing for at least twenty-four hours after denying a motion for a new trial or after denying a motion for post-verdict judgment of acquittal should be treated analogously
[[Image here]]
Under La.C.Cr.P. art. 873, if a motion for new trial or motion in arrest of judgment is filed, sentence shall not be imposed until at least twenty-four hours after the motion is denied, unless the defendant “expressly” waives the delay or pleads guilty. It is well-settled that a defendant may implicitly waive the twenty-four hour delay. See State v. Pierre, 99-3156, p. 7 (La.App. 4 Cir. 7/25/01), 792 So.2d 899, 903 (implicit waiver where defense counsel responds in the affirmative when trial court inquires if he is ready for sentencing).
State v. Green, 10-0791, p. 20-21 (La.App. 4 Cir. 9/28/11), 84 So.3d 573, 586.
However, “[t]he failure to observe the twenty-four hour delay mandated by article 873 is harmless where the defendant does not complain of his sentence on appeal.” State v. Augustine, 13-0397, p. 22 (La.App. 4 Cir. 1/22/14), 133 So.3d 148, 161 (citing State v. Duncan, 11-0563, p. 8 (La.App. 4 Cir. 5/2/12), 91 So.3d 504, 511; State v. Green, 10-1355, p. 12 (La.App. 4 Cir. 6/22/11), 69 So.3d 695, 703). Additionally, “[t]his court has also held that the failure to observe the twenty-four delay provided for by La.C.Cr.P. art. 873 is harmless error when a sufficient delay between the date of conviction and the date of sentencing exists; where there is no 11 indication that the sentence was hurriedly imposed; and when there is no argument or showing of actual prejudice by the failure to observe the delay.” Augustine, 13-0397, p. 22-23, 133 So.3d at 161 (citing State v. Stovall, 07-0343, p. 12 (La.App. 4 Cir. 2/6/08), 977 So.2d 1074, 1082; State v. Sam, 99-0300, p. 8 (La.App. 4 Cir. 4/19/00), 761 So.2d 72, 78).
In this case, because Mr. Celestain does not complain of his sentence on appeal, but only seeks a patent error review, the error is harmless. See State v. Wheeler, 04-0953, p. 8-9 (La.App. 4 Cir. 3/9/05), 899 So.2d 84, 89; see also State v. Hampton, 13-0580, p. 2, n. 3 (La.App. 4 Cir. 2/19/14), 136 So.3d 240, 243.
Finally, when sentencing Mr. Celestain, the trial court failed to indicate that Mr. Celestain’s sentence was to be served “with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence.” La. R.S. 40:967(B)(4)(b). However, this patent error is self-correcting, as “those restrictions automatically are contained in the sentences whether or not imposed by the sentencing court.” State v. Dominick, 13-0121, p. 6 (La.App. 4 Cir. 11/20/13), 129 So.3d 782, 787 (citing La. R.S. 15:301.1(A)); State v. Wilson, 09-0304 (La.App. 4 Cir. 2/17/10), 68 So.3d 1031; State v. Hall, 02-1098, p. 7-8 (La.App. 4 Cir. 3/19/03), 843 So.2d 488, 495; State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790. Therefore, these errors do not require reversal.

ERRORS PATENT AS TO MS. BANKS

With regard to Ms. Banks, the trial court also failed to observe the twenty-four *882 hour delay between the denial of Ms. Banks’ motion for new trial and | ^sentencing. However, in Ms. Banks’ case, the delay was implicitly waived. At the sentencing hearing, after the trial court denied Ms. Banks’ motions for new trial and for post-verdict judgment of acquittal or finding of a lesser-included offense, it reviewed correspondence from Ms. Banks’ family requesting leniency in sentencing. Thereafter, the trial court asked counsel for Ms. Banks if they were ready for sentencing to which counsel responded in the affirmative. Accordingly, because Ms. Banks implicitly waived the twenty-four hour delay in her acknowledgment that she was ready for sentencing, the error is harmless. See Green, 10-0791, p. 20-21, 84 So.3d at 586 (recognizing that “[i]t is well-settled that a defendant may implicitly waive the twenty-four hour delay”) (citing State v. Pierre, 99-3156, p. 7 (La.App. 4 Cir. 7/25/01), 792 So.2d 899, 903).
 The record demonstrates a second patent error in that Ms. Banks was not present at arraignment. “A patent error exists if the defendant was not present during this stage [arraignment] of the proceedings.” State v. Huffman, 480 So.2d 396, 398 (La.App. 4th Cir.1985). Arraignment was set for October 27, 2011, at which time defense counsel waived Ms. Banks’ presence. The matter was continued to November 9, 2011, and Ms. Banks failed to appear for arraignment on that date. Ms. Banks, however, has neither alleged nor shown prejudice from this failure to appear, nor did she object before proceeding to trial. Further, Ms. Banks’ counsel appeared on her behalf. Accordingly, this error is harmless.
Likewise, when sentencing Ms. Banks, the trial court failed to indicate that her sentence was to be served “with the first two years of said sentence being
11swithout the benefit of parole, probation, or suspension of sentence.” La. R.S. 40:967(B)(4)(b). This patent error is self-correcting, as “those restrictions automatically are contained in the sentences whether or not imposed by the sentencing court.” Dominick, 13-0121, p. 6, 129 So.3d at 787 (citing La. R.S. 15:301.1(A); Wilson, 09-0304, 68 So.3d at 1031). Accordingly, these errors do not require reversal.

SUFFICIENCY OF EVIDENCE

In Ms. Banks’ first assignment of error, she argues that the evidence is insufficient to uphold her conviction. This Court stated in State v. Collins, 10-1181, p. 3 (La.App. 4 Cir. 3/23/11), 62 So.3d 268, 270-71:
The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When circumstantial evidence is used to prove the commission of the offense, La.Rev.Stat. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This statutory test works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
Likewise, in our determination of whether there is sufficient evidence to support a conviction, “we are not called upon to decide whether we believe the witnesses or whether the conviction is contrary to the weight of the evidence.” State *883 v. Labat, 12-1210, p. 2 (La.App. 4 Cir. 4/24/13), 115 So.3d 665, 667 (citing State v. Smith, 600 So.2d 1319, 1324 (La.1992)). A single witness’ testimony, if | Hbelieved by the fact finder, is sufficient to support a conviction. Id. (citing State v. Wells, 10-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306). A factfinder’s decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. Id. (citing State v. James, 09-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996). Further, the Louisiana Supreme Court has recognized that in cases involving circumstantial evidence, if jurors reject a defendant’s hypothesis of innocence, the defendant is guilty unless there is another hypothesis establishing a reasonable doubt of the defendant’s guilt. State v. Smith, 12-2358, p. 6-7 (La.12/10/13), 130 So.3d 874, 878. On appellate review, the trier of fact is called upon to make certain factual findings, whose “discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.” Id., 12-2358, p. 7, 130 So.3d at 878 (citing State v. Mussall, 523 So.2d 1305, 1310 (La.1988)). As the Louisiana Supreme Court stated, “[we] accord due deference ‘to the good sense and fair-mindedness of jurors who have heard the evidence.’ ” Id. (citing State v. Jarman, 445 So.2d 1184, 1188 (La.1984)).
Ms. Banks submits to this Court other hypotheses that establish a reasonable doubt as to her guilt. Specifically, Ms. Banks avers that Detective Washington did not know whether Mr. Celestain was in possession of crack cocaine prior to approaching Ms. Banks’ vehicle. She suggests that Mr. Celestain “may have wanted to make it seem as if he was having difficulty getting crack [cocaine] in the hope that [Detective] Washington would reward him more graciously for his | ^efforts.” Likewise, Ms. Banks claims that because Detective Washington could only see Mr. Celestain’s hand placed in and out of the car window, [t]he possibility exists that the small amount of crack cocaine was already in Mr. Celestain’s hand when he put his hand through the window. Ms. Banks goes on to note that the police did not find her to be in possession of crack cocaine or a large amount of currency. Finally, Ms. Banks avers she is not seen on the video recording nor heard on the audio recording of the transaction, and that none of the officers overheard her selling crack to Mr. Celestain.
The trial transcript indicates that Detective Washington testified that Mr. Celestain did not put his hand in his pocket or near his mouth as he walked from the maroon Impala back to the surveillance vehicle to deliver the crack cocaine to Detective Washington. The detective also testified that after receiving the crack cocaine, he handed Mr. Celestain the two twenty-dollar bills from the NOPD Expense Fund. Detective Washington observed Mr. Celestain deliver the currency, which he could see in Mr. Celestain’s hand, to the driver of the maroon Impala. He also observed that when Mr. Celestain removed his hand from inside the Impala, he no longer saw the currency in Mr. Celes-tain’s hand.
Additionally, Detective Washington testified that his view of Mr. Celestain through the window during the transaction was unobstructed and that he was positioned fifteen to twenty feet away from the maroon Impala. Both Detective Washington and Detective Burke testified that no other individual was seen in the maroon Impala, nor was any other individual observed entering or exiting the | símpala. Mr. Celestain advised Detective Washington that the person in the car was his “girl,” that “[he] got [the crack cocaine] *884 from her,” and that “[sjhe’s sitting in the car [that Mr. Celestain approached].” The money receipt signed by Ms. Banks wherein she acknowledged the two twenty-dollar bills from the NOPD Expense Fund as her property was also introduced into evidence.
Considering the foregoing, although the evidence presented to the jury was circumstantial, the evidence was sufficient to establish beyond a reasonable doubt that Ms. Banks knowingly or intentionally distributed cocaine. “When a case rests primarily on circumstantial evidence and jurors reasonably reject the hypothesis of innocence advanced by the defendant, ‘that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt.’ ” Smith, 12-2358, p. 6-7, 130 So.3d at 878. We find no such hypothesis in this case; and therefore, this assignment of error lacks merit.

EXCESSIVE SENTENCE

In Ms. Banks’ second assignment of error, she argues that the trial court imposed an excessive sentence. This Court previously set out the standard of review for an excessive sentence:
In State v. Landry, 20031671 pp. 4-5 (La.App. 4th Cir. 3/31/04) 871 So.2d 1235, 1239, the Court set forth a standard of review for excessive sentencing claims:
La. Const, art. I, § 20 explicitly prohibit excessive sentences. State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Francis, 96-2389, pp. 6-7 (La.App. 4th Cir. 4/15/98), 715 So.2d 457, 461. However, theJjjpenalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, supra. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 676. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 10, 656 So.2d at 979.
As articulated in State v. Stanfield, 10-0854, p. 6-7 (La.App. 4th Cir. 1/19/11) 56 So.3d 428, 430, in reviewing a claim that a sentence is excessive the appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C. Cr. Proc. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181,189. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184,185.
State v. Ray, 10-1126, p. 10-11 (La.App. 4 Cir. 6/29/11), 70 So.3d 998,1005.
In this case, the statutory range for violation of La. R.S. 40:967(A)(1), distribution of cocaine, is two to thirty years. See La. R.S. 40:967(B)(4)(b). Ms. Banks received a sentence of seven years and six months in the Department of Cor *885 rections, with all but four years suspended. Although Ms. Banks has no prior criminal history, considering that Ms. Banks was facing up to thirty years, the sentence imposed is not grossly disproportionate to the offense. Additionally, for the reasons discussed relative to the sufficiency of evidence, the trial court had an adequate factual basis for the sentence imposed. Ms. Banks contends that the only mitigating factor considered by the trial court was that she was a first offender. 118However, “[w]here the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1.” Stanfield, 10-0854, p. 4, 56 So.Sd at 431. Likewise, the sentencing transcript indicates that the trial court reviewed the correspondence submitted on behalf of Ms. Banks and took it into consideration before sentencing.
Ms. Banks also asserts that the trial court should have considered that only a small amount of cocaine was involved. This Court has recognized that “[tjwenty-year sentences for distribution of cocaine have been found to be excessive where the amount of cocaine involved is small.” State v. Rogers, 01-2139, p. 5 (La.App. 4 Cir. 3/6/02), 812 So.2d 809, 813-15 (footnote omitted) (citing State v. Gordon, 444 So.2d 1188, 1191 (La.1984)). In this case, however, Ms. Banks’ sentence was much less than twenty years.
In State v. Stewart, 01-0976, p. 7 (La.App. 4 Cir. 11/21/01), 803 So.2d 120, 124, this Court recognized that “Louisiana courts have affirmed sentences of eight years for two counts of attempted distribution of cocaine, State v. Young, 34,534 (La.App. 2 Cir. 5/9/01), 786 So.2d 228, and of seven and one-half years for attempted distribution, State v. Smith, 97-2221 (La.App. 4 Cir. 4/7/99), 734 So.2d 826.” The defendant in Stewart was charged with one count of distribution of cocaine, and a jury found him guilty of the responsive verdict of attempted distribution of cocaine. Id., 01-0976, p. 1, 803 So.2d at 121.
The trial court sentenced the defendant to serve seven years at hard labor, with credit for time served but without the benefit of probation, parole, or ] 19suspension of sentence. Id. In sentencing the defendant, the trial court “considered that the defendant had been referred to a diversionary program for a 1996 arrest for possession of cocaine,” “other previous arrests for battery, disturbing the peace, criminal trespass, and public drunkenness,” and the conviction for attempted distribution of cocaine “was the defendant’s first felony conviction.” Id., 01-0976, p. 8, 803 So.2d at 125. On appeal, this Court found the seven-year sentence not excessive. Id. In view of Ms. Banks’ conviction for distribution of cocaine, not attempted distribution of cocaine, her sentence of seven years and six months, with three years and six months suspended, is not excessive.
Finally, Ms. Banks’ contention that her sentence is disproportionate to that of her co-defendant Mr. Celestain, who has a lengthier criminal history, lacks merit. The Louisiana Supreme Court recognizes that “as a general rule, the fact that a co-defendant has received a more lenient sentence does not necessarily indicate that the penalty imposed on the defendant is excessive.” State v. Tate, 01-1658, p. 26 (La.5/20/03), 851 So.2d 921 (citing State v. Day, 414 So.2d 349, 352 (La.1982)). Accordingly, we find that the trial court did not abuse its discretion in imposing Ms. Banks’ sentence. This assignment of error is without merit.

DECREE

Based on the foregoing reasons, we grant counsel for Mr. Celestain’s motion to withdraw and affirm the convictions and *886 sentences as to both Mr. Celestain and Ms. Banks.
AFFIRMED; MOTION TO WITHDRAW GRANTED.

. Although the crime of distribution of cocaine is a violation of La. R.S. 40:967(A)(1), *877 the record consistently references the penalty provision of the statute, La.R.S.40:967(B)(l). The bill of information charged Ms. Banks and Mr. Celestain with distribution of cocaine and were found guilty of the same without reference to a specific provision of the statute. This Court has determined that the consistent reference in the record to the incorrect statutory provision “is not grounds for reversal.” State v. Gayden, 13-0105, p. 9 (La.App. 4 Cir. 1/22/14), 133 So.3d 173, 179 (citing La. C.Cr.P. art. 464).

. According to Mr. Celestain’s appellate brief, a hearing on the multiple bill was pending at the time of briefing, and a ruling is still pending. If Mr. Celestain is ultimately adjudicated and sentenced as a multiple offender, that sentence will be docketed as a separate appeal with this Court.

. At trial there was contradictory testimony regarding the amount of money confiscated from Mr. Celestain.

. Mr. Celestain raises no assignments of error in this instant appeal, requesting only a review for errors patent.