PER CURIAM.
I,We granted the state’s application to review the split-panel decision of the Fourth Circuit reversing defendant’s conviction and sentence for distribution of cocaine in violation of La.R.S. 40:967(A)(1) on grounds of insufficient evidence. State v. Smith, 11-1669 (La.App. 4 Cir. 10/3/12), 101 So.3d 524 (Lombard, J., dissenting). For reasons that follow, we reinstate defendant’s conviction and sentence.
The circumstances leading to defendant’s prosecution on a single count of cocaine distribution are undisputed. By way of background, and as elaborated in testimony on defendant’s motion to suppress the evidence, on August 2, 2010, Detective Daniel Hunter, acting on a tip from a confidential informant, orchestrated a controlled purchase of crack cocaine from the residence located at 531 Sixth Street in New Orleans. The officers conducting the operation observed Hunter’s informant walk up to the house and hand money to Jason Smith, defendant’s twin brother, who met him at the door. Jason went back into the house, and a short time later came back out and handed the informant an object he represented as crack cocaine.
|2After confirming that the substance sold to his informant was crack cocaine, Detective Hunter secured a warrant to search the residence on Sixth Street and immediately returned to the scene. Before executing the warrant, Detective Hunter established a surveillance of the residence to make sure Jason Smith was present. Trial testimony begins at this point in the investigation. Hunter informed jurors that he parked five to 10 car lengths away from the residence and used binoculars to observe the premises. After approximately one hour, during which he had observed no activity, the detective witnessed a man on a bicycle ride up to the house and knock on the door. Defendant answered, and apparently instructed the unknown male to relocate a short distance away. Defendant then went back into the *876 house. A short time later, defendant left the house and approached the man on the bicycle waiting for him on the nearest corner at St. Thomas and Sixth Street. The bicyclist handed defendant an undetermined amount of currency. In return, defendant removed a white object from his mouth and handed it to the man. The bicycle rider inspected the object briefly and then put it into his mouth, and rode away unimpeded by Hunter or any of his back-up officers. Hunter explained why they did not stop the bicyclist: “When the buyers buy their narcotics they place it in their mouths. "When we attempt to stop those buyers, they swallow their narcotics so they don’t get arrested.”
Following the exchange, defendant walked back into the house. Detective Hunter continued his surveillance until Jason walked out on the porch. Satisfied that the original target of his investigation was in the residence, Hunter alerted his back-up units to execute the warrant. Detective Kyle Hinrichs entered the house first and observed Jason start to run upstairs. Hinrichs followed Jason up the stairs into a bedroom, and then into an attached bathroom. Although Jason’s hands had been empty when he began running upstairs, Hinrichs observed Jason at the toilet |3holding a clear plastic bag filled with white objects the officer believed were crack cocaine. Jason threw that bag into the toilet and successfully flushed it down.
The officers placed Jason and defendant under arrest. The other occupants of the house, some of them children, were not arrested, as they had no connection to the narcotics sales. A search incident to the arrests was conducted in the bedroom into which Jason was seen fleeing. That search uncovered Jason’s state identification card, a razor blade with white residue, and three boxes containing ammunition. Defendant had $11 in his pocket, and Jason had $10; neither twin was armed with a weapon.
After the inside of the house was secured, Detective Hunter obtained a saw and cut the PVC pipe leading outside from the bathroom where Jason flushed the bag. Hunter directed another detective to flush the toilet, and the bag Jason had thrown in the toilet eventually came through the pipe and fell into police custody. The bag contained 50 pieces of individually wrapped crack cocaine, white in color, in addition to two other bags, containing six and three pieces of cocaine, respectively, also white and also individually packaged, for a total of 59 rocks of cocaine. Detective Hunter testified that the manner in which the cocaine had been packaged was customary for resale purposes on the street. The officer conceded, however, that he could not state definitively that the object defendant removed from his mouth and the same object placed by the bicyclist in his mouth during the earlier exchange was, in fact, crack cocaine, or that it was sold out of the plastic bag recovered from the drain pipe. No other drugs of any nature were, however, found on the premises.
The state initially charged defendant together with his twin brother in one count of possession of cocaine with intent to distribute. On the morning of trial, the state amended the bill of information and separated the charges against the |4brothers. The count charging Jason Smith remained the same but in a separate count the state charged defendant with distribution of cocaine based on the exchange conducted with the unknown man on the bicycle. On May 18, 2011, a 12-person jury found defendant guilty as charged and Jason Smith guilty of the lesser included offense of simple possession of cocaine. On June 10, 2011, after denying motions for a post- *877 verdict judgment of acquittal and for a new trial, the court sentenced defendant to 10 years’ imprisonment at hard labor and his twin brother to four years’ imprisonment at hard labor.
Defendant alone appealed his conviction and sentence, arguing in a single assignment of error that the evidence presented at trial was insufficient to support the jury’s verdict. A majority on the Fourth Circuit panel agreed. Focusing on Detective Hunter’s admission he could not state definitively what defendant had exchanged with the bicyclist, the majority concluded that “[bjecause the State has failed to prove that the item the defendant allegedly transferred was a controlled dangerous substance, the State has failed to prove that the defendant is guilty of distribution of cocaine.” Smith, 11-1669 at 12, 101 So.3d at 531. The majority further noted that the state had failed to provide “any case law in support of its argument that the evidence was sufficient to support the defendant’s conviction.” Id. Dissenting, Judge Lombard observed that “[v]iewing the evidence in the light most favorable to the prosecution, it can be reasonably inferred that the defendant knowingly or intentionally distributed cocaine to the unknown male on the bicycle.” Smith, 11-1669 at 1, 101 So.3d at 531 (Lombard, J., dissenting).
We agree with Judge Lombard that the evidence presented at trial was sufficient for any rational trier of fact to find beyond a reasonable doubt that the small white object defendant removed from his mouth and handed to the bicycle rider was crack cocaine. Substantial jurisprudence exists, in fact, for the | .^proposition that a contraband drug may be identified by circumstantial evidence as well as direct testimony with respect to scientific tests conducted on the substance. See, e.g., United States v. Eakes, 783 F.2d 499, 505 (5th Cir.1986) (Such circumstantial proof may include “ ‘ “evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.” ’ ”) (quoting United States v. Scott, 725 F.2d 43, 45-46 (4th Cir.1984) (quoting United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir.1976))); State v. Harris, 02-1589, p. 6 (La.5/20/03), 846 So.2d 709, 713-14 (“The federal courts subscribe generally to the view that the ‘government need not introduce scientific evidence to prove the identity of a substance ... as long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal.’ Identification of a controlled substance does not require direct evidence if available circumstantial evidence established its identity beyond a reasonable doubt.... Identification based upon familiarity through law enforcement coupled with present observation of the substance at hand will suffice to establish the illicit nature of a suspected substance.”) (quoting United States v. Harrell, 737 F.2d 971, 978 (11th Cir.1984) (other citations omitted)); State v. Chatman, 599 So.2d 335, 347 (La.App. 1 Cir. 1992) (“As long as there is sufficient lay testimony or circumstantial evidence from which a jury could find beyond a reasonable doubt that a substance was identified beyond a reasonable |6doubt, the lack of scientific evidence does not warrant rever *878 sal”) (citing United States v. Sanchez De-Fundora, 893 F.2d 1173, 1175 (10th Cir.1990)).
In the present case, defense counsel vigorously challenged the state’s evidence for what it apparently lacked. Counsel emphasized that the police had not used any cameras' or video recorders to document their surveillance of the residence or capture the sale ostensibly conducted by defendant at the nearest corner. The officers had let the bicycle rider pedal away unimpeded and the police had not even photographed the cut drain pipe from which the plastic bag filled with crack cocaine emerged. Defense counsel also sharply questioned whether a police officer, even in an unmarked car, could maintain an hour-long surveillance using binoculars and escape notice of someone bent on selling drugs as well as someone intent on buying drugs only a short distance away. And, counsel’s cross-examination led Detective Hunter to acknowledge he could not exclude the possibility the white object he observed during defendant’s exchange with the bicyclist could have been bubble gum or candy. Detective Hunter pointedly observed that he “originally didn’t charge [defendant] with distribution of cocaine.” In fact, as indicated by the arrest register filed in the record, the detective had arrested both brothers for possession of cocaine with intent to distribute, the charge initially brought by the state against defendant as well as Jason Smith. Driving the point home, counsel asked the detective: “My question is, as you sit here today, with Brandon being charged and on trial for distribution of cocaine, you can’t tell me that Brandon actually distributed cocaine, can you?” Detective Hunter replied simply, “No sir.”
But jurors, not Detective Hunter, were the fact finders at trial. When a case rests primarily on circumstantial evidence and jurors reasonably reject the hypothesis of innocence advanced by the defendant, “that hypothesis falls, and the 17defendant is guilty unless there is another hypothesis which raises a reasonable doubt.” State v. Captville, 448 So.2d 676, 680 (La.1984). This Court has emphasized that the due process, rational trier of fact standard set forth by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), for reviewing the sufficiency of the evidence, does not serve as a vehicle for second guessing the rational credibility determinations of the fact finder. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). Thus, “the actual fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.” State v. Mussall, 523 So.2d 1305, 1310 (La.1988). We also accord due deference “to the good sense and fairmindedness of jurors who have heard the evidence.” State v. Jarman, 445 So.2d 1184, 1188 (La.1984).
In the present case, jurors clearly found credible Detective Hunter’s testimony with respect to what he observed between the bicyclist and defendant at the corner of Sixth Street and St. Thomas near his surveillance point despite the failure of the officer to record the transaction as tangible proof it occurred. We find nothing irrational in that decision. Mussall, 523 So.2d at 1311 (“[E]ye witness testimony alone is usually sufficient in the mill run of cases[.]”). Given that credibility determination, jurors acting with good sense reasonably rejected the defendant’s hypothesis of innocence because people ordinarily do not meet on a street corner to conduct a mouth-to-mouth exchange of bubble gum or candy for money. As the prosecutor argued in closing, what the detective saw was a narcotics transaction because the alternative proposed by defendant asked *879 jurors “to believe that somehow the guy on the green bike said, ‘Thanks for taking the gum out of your mouth and giving it to me, here is some money’...
Is As to what controlled substance that transaction involved, Detective Hunter described the object defendant removed from his mouth and exchanged for money as white in color, the same color as the individually wrapped pieces of crack cocaine subsequently recovered from the drain pipe of the residence on Sixth Street, from which defendant had emerged to make the sale. Detective Hunter also described the individually packaged rocks of cocaine as “dime bags” because they sold for $10 on the street. Defendant had a relatively small amount of money on him when arrested but it was enough to cover the sale of one rock of cocaine and perhaps account for why only an odd number of rocks were found in the plastic bag flushed down the toilet by Jason Smith instead of an even 60. The officers found no other drugs besides cocaine on the premises. The prosecutor’s theory of the case, that the twin brothers were engaged in the street level sales of rock cocaine from the residence on Sixth Street, accounting for the exchange with the man on the bicycle of a single dime bag, was thus consistent overall with the evidence and supported the jury’s finding that defendant had delivered one rock of cocaine to his purchaser. Any inconsistency with that theory in the jury’s return of a lesser verdict of simple possession of cocaine for Jason Smith does not bear on the fundamental fairness of the verdict against his twin brother, “as long as the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant was guilty of every element of the crime of which he was convicted.” State v. Irvine, 535 So.2d 365, 369 (La.1988) (discussing United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984) (“The government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilty beyond a reasonable doubt. We |9do not believe that further safeguards against jury irrationality are necessary.”) (citation omitted)).
The decision of the court of appeal is therefore reversed and defendant’s conviction and sentence are reinstated.
JOHNSON, Chief Justice, dissents and assigns reasons.