# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-408

STATE OF LOUISIANA

VERSUS

GERALD SAMUEL

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 207720-B
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Van H. Kyzar, and Candyce G. Perret, Judges.

**CONVICTION AND SENTENCE AFFIRMED.**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**Post Office Box 2125**
**Lafayette, Louisiana  70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Gerald Samuel**

**Charles A. Riddle, III**
**District Attorney**
**Andrea D. Aymond**
**Assistant District Attorney**
**Twelfth Judicial District**
**Post Office Box 1200**
**Marksville, Louisiana  71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**CONERY, Judge.**

Defendant, Gerald Samuel, was charged by bill of indictment in Avoyelles Parish with the first degree rape of N.P.,[1] a juvenile under the age of thirteen, in violation of La.R.S. 14:42. Prior to trial, the State filed a "Notice of Intention to Introduce Evidence of Other Crimes, Wrongs, or Acts" committed by Defendant pursuant to La.Code Evid. arts. 404(B)[2] and 412.2.[3]

On October 8, 2018, the State filed an amended notice of intent, seeking to introduce testimony from Defendant's sister, Desiree Samuel, as well as evidence concerning charges against Defendant involving N.P. and arising out of Pointe

---

[1] The victim's initials have been used in accordance with La.R.S. 46:1844(W).

[2] Louisiana Code of Evidence Article 404(B) provides in pertinent part:

**B. Other crimes, wrongs, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

[3] Louisiana Code of Evidence Article 412.2 provides:

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.

C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.

Coupee Parish in 2016. The amendment specifically sought introduction of said evidence through La.Code Evid. art. 412.2.

Following a November 13, 2018 hearing on the State's motion and amended motion, the trial court issued written "Reasons for Ruling" finding the evidence admissible under La.Code Evid. arts. 404(B) and 412.2. At the subsequent trial on November 28, 2018, a unanimous jury found Defendant guilty as charged of the first degree rape of his minor daughter, N.P., who was ten years old at the time of the rape.

On January 22, 2019, prior to sentencing, Defendant filed a "Motion for Post Verdict Judgment of Acquittal or in the Alternative a Motion for New Trial." Defendant's argument was that the evidence at trial did not permit a finding of guilt. The trial court denied Defendant's motion and then asked if Defendant was "ready to be sentenced?" Defense counsel replied, "Yes, Your Honor." At that time, the trial court imposed a mandatory life sentence without benefits pursuant to La.R.S. 14:42.[4] Although defense counsel objected to the sentence as excessive, no motion to reconsider sentence was ever filed. Defendant now appeals his conviction and sentence, assigning three errors and alleging two additional errors patent.

**FACTS AND PROCEDURAL HISTORY**

The victim, N.P., was abandoned by her mother and was in the custody of her father, Defendant Gerald Samuel, living in Simmesport, Louisiana, located in Avoyelles Parish. Also residing in the Simmesport residence were Defendant's girlfriend, Margueta Smith, her sixteen-year-old minor daughter, J.S, and occasionally Ms. Smith's two minor grandchildren.

---

[4] Defendant contends he was not actually sentenced on January 22, 2019. That issue will be addressed in Defendant's first alleged error patent.

Prior to being placed in Defendant's custody, N.P. lived with her extended family in New Roads, Louisiana, located in Point Coupee Parish. N.P.'s extended family included her grandmother, Emma Faure, who was Defendant's mother, and N.P.'s two aunts, Defendant's sisters, Mydrest Williams and Desiree Samuel.

On January 12, 2016, Ms. Smith made a frantic call to the Avoyelles Parish 911 Communications Center, issuing a complaint that Defendant was trying to look at her minor daughter while her daughter was bathing. Ms. Smith made a second call to 911 claiming she was having a medical emergency and an ambulance was sent to transport Ms. Smith to the hospital. Alexis McNeal, the Director of the Avoyelles Parish 911 Communications Center, confirmed the date, time, and authenticity of the calls. However, in her testimony at the November 13, 2018 Article 404(b) hearing, and at the trial in this matter, Ms. McNeal was unable to relate any information about what may have occurred subsequent to Ms. Smith's complaint about the alleged actions of Defendant.

After this incident, while N.P. and Defendant were visiting the family in New Roads, an incident took place which ultimately resulted in a Bill of Information being filed against Defendant in Point Coupee Parish, where New Roads is located. The Bill of Information charged Defendant as follows,

> COUNT 1: R.S. 14:42 FIRST DEGREE RAPE ON OR ABOUT AUGUST 1, 2016 to ON OR ABOUT NOVEMBER 30, 2016, GERALD DEWAYNE SAMUEL did commit first degree rape upon N.[P].

> COUNT 2: R.S. 14:89.1.A.(2) AGGRAVATED CRIME AGAINST NATURE, ON OR ABOUT AUGUST 1, 2016 to ON AND ABOUT NOVEMBER 30, 2016 GERALD DEYAYNE SAMUEL did commit crimes against nature with N.[P.] by engaging in sexual intercourse, sexual battery, carnal knowledge of a juvenile and indecent behavior with a juvenile, with the victim N.[P.] who was under the age of thirteen, and who was known to the offender to be related to the offender as his biological child.

These charges remain pending in anticipation of the outcome of the case against Defendant charged and tried in Avoyelles Parish that is the subject of this appeal.

The basis of the Bill of Information filed in Point Coupee Parish was a disclosure by N.P. to her grandmother and aunt of alleged sexual abuse by Defendant. A complaint was made to the Pointe Coupee Sheriff's Office that Defendant may have raped N.P. on or about November 30, 2016, which prompted the involvement of a juvenile officer and the Department of Family Services. The Point Coupee Sheriff's Office contacted the Baton Rouge Children's Advocacy Center to make an appointment for both a physical examination of and an interview with N.P.

On October 17, 2017, N.P. underwent a medical examination at Our Lady of The Lake Regional Medical Hospital, also located in Baton Rouge. The examination was conducted by Dr. Christopher James Woodward, DO, FACEP, who subsequently testified at trial that due to N.P.'s age, which resulted in a lack of cooperation, he was unable to conduct a thorough examination.

On October 19, 2017, a written "Forensic Interview" and an oral "Interview of N.P." were conducted by Karen Arias at the Baton Rouge Children's Advocacy Center. The interview was observed by Bridget Savoy, a social worker with the East Baton Rouge Parish Department of Children and Family Services, and Detective Cedrick D. Epps, an officer with the Point Coupee Sheriff's Office, who accompanied N.P. to the examination and the interview.

After observing the October 19, 2017 interview with N.P., Detective Epps contacted Lieutenant Michael Johnson, of the New Roads Police Department, who began an investigation of the allegations made against Defendant, as the alleged sexual abuse of N.P. took place within the city limits of New Roads and was therefore under the jurisdiction of the New Roads Police Department.

4

The October 19, 2017 interview with N.P. at the Baton Rouge Children's Advocacy Center also revealed that the allegations made by N.P. against Defendant indicated that the same type of sexual abuse had also taken place in Simmesport, located in Avoyelles Parish. Due to an inter-departmental exchange, this information was communicated by Detective Epps to Detective Gerald Augustine with the Simmesport Police Department. Detective Augustine contacted Defendant and determined that he was living with his then girlfriend, Ms. Smith, and several juveniles in Simmesport.

Detective Augustine reported the incident to the Children's Advocacy Center in Alexandria, located in Rapides Parish, and scheduled an interview for N.P. on March 21, 2018. At the time of the interview, N.P. was no longer living with her father and was living with her extended family in New Roads. Detective Augustine arranged for N.P. to be transported along with her aunt, Ms. Williams, to Alexandria for a second interview.

On March 21, 2018, a second interview of N.P. was conducted by Ashley Honor at the Alexandria Children's Advocacy Center. N.P.'s trial testimony was consistent in the two separate interviews taken in the Baton Rouge and Alexandria Children's Advocacy Centers. Both Ms. Arias and Ms. Honor, the individuals who conducted the interviews with N.P., testified at the trial and related N.P.'s description of the rape by her father to the jury.

The March 21, 2018 interview of N.P. by the Alexandria's Children's Advocacy Center resulted in an active criminal warrant being issued by Detective Augustine, which was physically served on Defendant on April 17, 2018, at the Avoyelles Detention Center #1 in Marksville. It is unclear from the record why

Defendant was in the custody of Avoyelles Parish authorities when the warrant was served.

On April 17, 2018, Officer Crystal Duckworth physically served the warrant, advised Defendant of his Miranda Rights, and read the charges against him under La.R.S. 14:89.1(2), "Aggravated Crimes Against Nature," and La.R.S. 14:.42.(A)4, "First Degree Rape." In the report Officer Duckworth completed after service of the warrant on the Defendant, she stated that, while Defendant was being booked on the above charges he stated, "I done that in New Roads, not in Simmesport." Officer Duckworth's "Simmesport Police Department Supplemental Report," dated April 26, 2018 was included in the evidence admitted in connection with her trial testimony. In her testimony at trial, Officer Duckworth confirmed that, "He told me I didn't do that in Simmesport I did that whenever I was in New Roads."

On June 21, 2018, a Bill of Indictment was handed down by the Avoyelles Parish Grand Jury, charging Defendant, with first degree rape, under La.R.S. 14:42. The Indictment stated as follows:

> On or about July through September 2017, in the parish of Avoyelles, GERALD SAMUEL committed the offense of R.S. 14:42 entitled "FIRST DEGREE RAPE" in that he did have anal and vaginal sexual intercourse with minor "N.P.", without her consent and when she was under the age of 13 years old, contrary to the law of the State of Louisiana and against the peace and dignity of the same.

During the earlier investigation of the allegations made against Defendant in the Bill of Information filed in Point Coupee Parish, at the request of the district attorney, a video interview was taken by Lieutenant Johnson of the Defendant's adult sister, Ms. Samuel. Lieutenant Johnson testified at trial that he did not know the exact date of the video interview. This video interview was the subject of a La.Code Evid. arts. 404(B) and 412.2 hearing on November 13, 2018, prior to trial

in this case on November 27 and 28, 2018. This video interview will be more thoroughly discussed in Defendant's Assignment of Error One.

On September 25, 2018, the State filed a "Notice of Intention to Introduce Evidence of Other Crimes, Wrongs, or Acts" committed by Defendant pursuant to La.Code Evid. arts. 404(B) and 412.2. The initial motion sought to introduce the call made to 911 on January 12, 2016 by Ms. Smith, the girlfriend of Defendant, wherein she claimed that Defendant was trying to look at her minor daughter while she was bathing.

On October 4, 2018, the State filed an amended notice of intent, seeking to introduce video testimony from Defendant's adult sister, Ms. Samuel, that Defendant molested her multiple times when she was approximately ten years old, as well as evidence concerning charges against Defendant involving N.P. arising out of Pointe Coupee Parish in 2016.[5] The amendment specifically sought introduction of said evidence at trial through La.Code Evid. art. 412.2.

Following a November 13, 2018 hearing on the State's motion and amended motion, the trial court issued written "Reasons for Ruling" on November 21, 2018, finding the evidence admissible under La.Code Evid. arts. 404(B) and 412.2. The trial court specifically found that:

> After a consideration of all evidence and applicable law, it is quite clear that the probative value of all evidence submitted by the State of Louisiana in support of their Notice and Amending Notice has probative value that is substantially outweighed by any prejudicial effect on the defendant and is therefore ADMISSABLE.

---

[5] The amended notice also sought the introduction into evidence of text messages between J.S., the minor daughter of Margueta Smith, and Defendant's sister Mydrest Samuel. These text messages were withdrawn by the State.

The specific evidence admitted by the trial court included: 1) The video tape of the interview of N.P. taken at the Baton Rouge Children's Advocacy Center, which was the basis for the Bills of Information filed against Defendant; 2) The testimony of Alexis McNeal, Director of the Avoyelles Parish 911 Communications Center, who confirmed the date and time of the January 12, 2016, 911 calls made by Ms. Smith; 3) Testimony from Ms. Samuel, adult sister of Defendant, stating that Defendant "did things" to her beginning at age nine, documented in greater detail in the video interview taken of Ms. Samuel by Lieutenant Johnson of the New Roads Police Department. This video interview was entered into evidence by the trial court "because it is very consistent with the defendant's alleged lustful acts that are asserted in this case."

As previously indicated, at the subsequent trial held on November 27 and 28, 2018, a unanimous jury found Defendant guilty as charged of the first degree rape of his minor daughter, N.P., and he was sentenced to life imprisonment without benefits pursuant to La.R.S. 14:42.[6]

Defendant now appeals his conviction and sentence, alleging two additional errors patent, and assigning three errors.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there is one possible error patent involving the sentence imposed. Additionally, Defendant raises two potential errors patent which are discussed below.

---

[6] Defendant contends he was not actually sentenced on January 22, 2019. That issue will be addressed in Defendant's first alleged error patent.

At sentencing, the trial court stated the following regarding diminution of sentence:

> [T]he law tells me I have to sentence you under [La.R.S.] 14:42[(B) 2] and through C(b) (sic) to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence; this is a crime of violence and a sex offense and is not subject to diminution for good behavior; it is not an enhanced sentence[.]

The trial court's statement that the sentence is not subject to diminution could be interpreted as a denial of diminution of sentence by the trial court. In *State v. Burton*, 18-935, p. 2 (La.App. 3 Cir. 6/5/19), 274 So.3d 122, 126-27, this court held:

> Although La.Code Crim.P. art. 894.1(D) previously required the trial court to advise a defendant of whether his sentence was subject to diminution for good behavior, the article was amended in 2010 to delete that requirement. 2010 La. Acts. No. 350, § 1; *See also State v. D.G.H.*, 07-524 (La.App. 3 Cir. 10/31/07), 969 So.2d 1254. Thus, at the time the trial court imposed the present sentences, La.Code Crim.P. art. 894.1(D) no longer required such an advisement. Prior to the amendment this court distinguished between an advisement and an actual denial of diminution of sentence, finding no corrective action was needed if the trial court merely advised a defendant that his sentence was not subject to diminution. *State v. James*, 09-606, p. 3 (La.App. 3 Cir. 12/9/09), 26 So.3d 915, 917.

We interpret the trial court's statement simply as an advisement that Defendant's sentence was not subject to diminution and not as a denial by the trial court of diminution of sentence. We further note that the trial court is no longer required to "advise" a defendant as to whether his sentence is subject to diminution. La.Code Crim.P. art. 894.1(D).

**ERROR PATENT NUMBER ONE RAISED BY DEFENDANT:**

In the first of two alleged errors patent raised by Defendant, he contends the trial court did not actually impose a sentence upon him on January 22, 2019. Defendant contends that this case is factually similar to *State v. Coward*, 18-951

9

(La.App. 3 Cir. 6/5/19) (unpublished opinion),[7] a case wherein this court held that the trial court failed to impose a sentence, despite the minutes and Uniform Commitment Order stating sentence was imposed, and remanded the case for resentencing with instructions. In *Coward*, the trial court stated the following at sentencing: "And under Louisiana revised statute 1430.1, [sic] the punishment for second degree murder is life imprisonment and [sic] hard labor without the benefit of parole, probation, or suspension of sentence. Again, a jury of Mr. Coward's peers has made that determination." *Id.* at p. 5.

In the instant case, the trial court stated:

Mr. Samuel, you've been found guilty by an Avoyelles [P]arish jury of the offense of First Degree Rape, in considering this conviction and the mandatory sentencing provisions in [La.]R.S. 14:42, the law tells me I have to sentence you under [La.R.S] 14:42B 2 and through C(b) to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence; this is a crime of violence and a sex offense and is not subject to diminution for good behavior; it is not an enhanced sentence; you have two years from the date that the judgment of conviction and sentence becomes final within which to file fort [sic] post[-]conviction relief, thirty days to appeal.

Unlike the trial court in *Coward*, which simply stated what the penalty was under the statute, the statement by the trial court in this case can be construed that the trial court was imposing said sentence. The subsequent advisements regarding the nature of the offense and the sentence's non-enhanced nature further indicate the trial court was actually imposing a sentence. Defendant's assigned error lacks merit.

**ERROR PATENT NUMBER TWO RAISED BY DEFENDANT:**

Defendant contends the trial court failed to wait the mandatory twenty-four hours, pursuant to La.Code Crim.P. art. 873, after denying the motion for new trial

---

[7] 2019 WL 2366740.

10

before imposing a sentence, and he did not expressly waive the sentencing delays.[8] Thus, he contends the sentence should be vacated and the case remanded for a new sentencing hearing.

Immediately after the trial court denied Defendant's motions for post-verdict judgment of acquittal and motion for new trial, the trial court asked defense counsel if Defendant was ready to be sentenced. Defense counsel replied he was. The transcript of the exchange between the trial court and defense counsel states as follows:

**BY THE COURT**:

. . . .

[B]oth motions are denied.

Objection to the ruling of the court is noted and error is assigned.

Mr. Smith, is Mr. Samuel ready to be sentenced?

**BY MR. SMITH:**

Yes, Your Honor.

A review of the jurisprudence indicates this is sufficient to constitute an express waiver of the twenty-four-hour delay under the circumstances of this case.

In *State v. Kisack*, 16-797, pp. 7-8 (La. 10/18/17), 236 So.3d 1201, 1205-06 (footnote omitted), *cert. denied*, __ U.S. __, 138 S.Ct. 1175 (2018), the supreme court stated:

> While some circuits courts, predominantly the Fourth Circuit, have found that the statutory delay may be "implicitly waived" when a

---

[8] Louisiana Code of Criminal Procedure Article 873 states:

> If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.

11

defendant announces he is ready for sentencing, *see, e.g., State v. Foster*, 02-0910, p. 2 (La. App. 4 Cir. 12/11/02), 834 So.2d 1188 ("A defendant may implicitly waive the twenty-four hour delay by announcing his readiness for sentencing."), the waivers under the circumstances presented in those decisions are typically not so much implicit as expressly made (by announcing that defendant is ready to be sentenced) without being as fully articulated as they should perhaps have been. *See, e.g., State v. Celestain*, 13-1262, pp. 11-13 (La. App. 4 Cir. 7/30/14), 146 So.3d 874, 881-82 (finding no error "because Ms. Banks implicitly waived the twenty-four hour delay in her acknowledgment that she was ready for sentencing."). Here, however, it appears that defense counsel simply participated in the sentencing hearing, which would truly be an implicit waiver if such a waiver were authorized by the Criminal Code. An implicit waiver, however, runs afoul of the plain language of Art. 873 that requires that the waiver be expressly made.

Nonetheless, an error in failing to observe the statutory sentencing delay may still be found harmless. Under the circumstances presented here, in which a defendant who faced a sentencing range of 20 years to life and received the maximum sentence authorized for a fourth-felony offender for possession of a contraband cell phone, it is difficult to conclude the error is harmless.

Then, in *State v. Boyd*, 17-1749, pp. 1-2 (La. 8/31/18), 251 So.3d 407, 408, the supreme court found an express waiver when the defense responded that it had no objection to proceeding with sentencing:

However, La.C.Cr.P. art. 873 also provides: "If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately." At the outset of the hearing here, the state offered the trial record into evidence with the proviso that it was doing so if defendant was prepared to go forward with the hearing. The defense responded that it had no objection to doing so. This sufficed to constitute an explicit waiver of the sentencing delay, as authorized by La.C.Cr.P. art. 873. Accordingly, we reverse the court of appeal, reinstate the sentence, and remand to the court of appeal to consider any pretermitted claims.

We find that defense counsel's response that Defendant was ready for sentencing constituted an express waiver of the delay required by La.Code Crim.P. art. 873. Moreover, even if an error had occurred, the error would be rendered harmless by the imposition of a mandatory life sentence as required by La.R.S.

14:42. *See State v. Ware*, 07-968 (La.App. 3 Cir. 3/5/08), 980 So.2d 730, *writ denied*, 08-847 (La. 10/31/08), 994 So.2d 534.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In his first assignment of error as to the merits of the case, Defendant contends the trial court erred in allowing a video interview of Defendant's adult sister, Ms. Samuel, to be played to the jury without Ms. Samuel testifying at trial. As noted above, a hearing was held on the admission of this video interview on November 13, 2018. Ms. Samuel testified under oath subject to cross examination at that hearing. The trial court then admitted the video interview into evidence.

In the video interview, Ms. Samuel stated she returned to her home in New Roads, Point Coupee Parish one morning to get the kids ready for school. Defendant had custody of his minor daughter, N.P., who was ten years old at the time of the incident in question. N.P. and Defendant had been spending the night at Ms. Samuel's on two sofas in the living room. Ms. Samuel noticed a "wet spot" on the sofa, and questioned her niece, the victim N.P., who subsequently told Ms. Samuel that her father, the Defendant, caused the "wet spot."

Lieutenant Johnson, the detective with the New Roads Police Department who conducted the video interview during his investigation of the case, asked Ms. Samuel if she knew whether something had happened between the victim, N.P., and Defendant. Ms. Samuel responded that she did not know for sure, but that Defendant had molested her when she was a ten-year-old child. Ms. Samuel stated Defendant had molested her several times, but no one took any action to stop it.

At the hearing on the admissibility of the video interview evidence, Ms. Samuel testified that when she was about nine years old and living at her mother's home with her brother, Defendant, he would put his fingers in her vagina and would

touch her breasts, stating it happened more than five times but less than ten. She also stated in the video interview that she told her mother and siblings, but no one would do anything to prevent it. Following Ms. Samuel's testimony at the November 13, 2018 hearing, defense counsel, Mr. Allen Smith, had the following exchange with the trial court:

**BY MR. SMITH:**

Your Honor, I'm going to object to any portion of that film which is hearsay, I'm objecting to it. So that later if they play it in front of the jury the hearsay statements will be precluded.

**BY THE COURT:**

If there is any hearsay on here but her testimony as to what she claims happened to her is clearly admissible.

But if there are any hearsay statements as to what someone told her that will be sustained.

**BY MR. SMITH:**

O.K., thank you.

During Defendant's subsequent trial in Avoyelles Parish, Lieutenant Johnson of the New Roads Police Department was the State's first witness. At no point during the State's direct examination of Lieutenant Johnson were any questions asked concerning written statements or video interviews taken of N.P.'s family, including Defendant's sister, Ms. Samuel, during his investigation of the case.

On cross-examination, defense counsel began questioning Lieutenant Johnson about the video interview he took of Ms. Samuel during the investigation of the separate incident in New Roads, Point Coupee Parish, specifically addressing the allegations that Defendant had raped the victim, N.P., on a separate occasion in Point Coupee Parish. Defense counsel asked Lieutenant Johnson with respect to Ms. Samuel, "did she [(Ms. Samuel)] indicate that she had been raped by Gerald

14

[(Defendant)]?" Lieutenant Johnson responded, "I did a video interview of her and she stated that he [(the Defendant)] did when she [(Ms. Samuel, his sister)] was younger about nine years old." Lieutenant Johnson further testified in answer to defense counsel's questions that no arrests were made. He explained that it was his "understanding she [(Ms. Samuel)] told her mother [(Ms. Faure)]" but she "never did anything about it." Defense counsel also elicited testimony from Lieutenant Johnson that Defendant was not charged with raping his sister, Ms. Samuel, despite her statement that he had raped her.

The State, on re-direct examination, introduced the video interview through Lieutenant Johnson, who testified he was the one wearing the camera that videoed the conversation with Ms. Samuel. Ms. Samuel had, in fact, testified under oath, subject to cross examination when the video interview was introduced at the earlier November 13, 2018 Article 404(B) hearing on admissibility.

Thus, the record reflects that defense counsel "opened the door" to the admission of the video interview of Ms. Samuel through the testimony of Lieutenant Johnson in order to clarify the actual testimony of Ms. Samuel. *See State v. Overton*, 337 So.2d 1201, 1206 (La.1976) ("The court correctly ruled that defense counsel had opened the door to this area on cross-examination and that it was a proper subject for redirect examination…. Where defense counsel went on cross-examination, the State had the right to follow on redirect.").

When the video interview reached the point where Ms. Samuel stated N.P. "did say it was her father," defense counsel objected "to any hearsay testimony that's in this film." The trial court overruled the objection. The only objection made by defense counsel was to the alleged hearsay statement that the victim "did say it was

15

her father." No specific objection was made to the introduction of the video interview itself.

In addition to the video interview of Ms. Samuel, Ms. Faure, Defendant's mother, also testified at trial. Ms. Faure was transported to the courthouse in an ambulance and entered the courtroom on a stretcher. Ms. Faure stated in her testimony that N.P. had told her about the alleged sexual abuse by Defendant, and that he had threatened to beat and or kill N.P. if she told anyone. Ms. Faure did not know if Defendant had raped N.P., but she confirmed that Ms. Samuel had been molested by Defendant at approximately the same age and that she did not report the problem to the authorities. She testified that at that time, she was afraid of what could happen to her and her children if she reported the information to law enforcement.

The focus of Defendant's objection was the hearsay statement by Ms. Samuel that the victim "did say it was her father." The Louisiana Supreme Court has long held that, "even if testimony is inadmissible hearsay, if it is merely cumulative or corroborative of other testimony adduced at trial, then the admission of the hearsay is harmless." *State v. McIntyre*, 381 So.2d 408, 411 (La.1980), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209 (1980). N.P.'s statements made in the interviews taken at the Baton Rouge and Alexandria Children's Advocacy Centers were introduced into evidence and were also consistent with N.P.'s trial testimony. N.P.'s trial testimony vividly describing the sexual abuse by Defendant would render any inadmissible hearsay in Ms. Samuel's video interview harmless based on our review of the entire trial transcript.

Further, defense counsel at no time objected to the introduction of the video interview of Ms. Samuel through the trial testimony of Lieutenant Johnson without

the live testimony at trial of Ms. Samuel. Defendant's "Motion for Post Verdict Judgment of Acquittal or in the Alternative a Motion for New Trial" did not contest the introduction of the video interview through Lieutenant Johnson, nor was the issue raised at the hearing on said motion. Defendant now contends for the first time on appeal that the trial court erred in allowing the State to introduce Lieutenant Johnson's video interview with Ms. Samuel without requiring Ms. Samuel to testify at the trial as to the statement and claims she made in the video interview.

Louisiana Code of Criminal Procedure Article 841(A) requires a contemporaneous objection:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

In *State v. McGinnis*, 07-1419 (La.App. 3 Cir. 4/30/08), 981 So.2d 881, this court held that where a defendant objected to the introduction of evidence on a ground other than the ground asserted on appeal, he was precluded from raising said objection on appeal. Specifically, this court stated:

> In his fifth assignment of error, the Defendant contends the trial court erred by allowing Detective Green to testify to hearsay evidence concerning a revolver which was recovered at the crime scene. The Defendant cites to record page 111. On that page of the record, the State asked Detective Green if State Exhibit 18 was the revolver recovered from the Defendant's car. Defense counsel objected, stating, "Mr. Green had stated earlier that he was not present at the crime scene; so, he can't testify to whether that's the revolver that was recovered or not." The Defendant did not object based on hearsay. This issue was not asserted in the trial court and is not [sic] be addressed by this court on appeal. La.Code Crim.P. art. 841; Uniform Rules—Courts of Appeal, Rule 1-3.

*Id.* at 895.

Because Defendant only objected to the hearsay portion of the video interview and failed to object to the State's introduction of the video interview through Lieutenant Johnson, he may not now raise a claim that it was error for the trial court to allow introduction of the video interview.

**ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE:**

In his second assignment of error, Defendant contends his mandatory life sentence was excessive. In his third assignment of error, Defendant contends that if trial counsel's failure to file a motion to reconsider sentence deprives him of review of his sentence, trial counsel was ineffective. Under La.Code Crim.P. art. 881.1(E):

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Although Defendant objected to his sentence, he failed to file a motion to reconsider. Thus, Defendant could be precluded from appealing his sentence. *See State v. Duplantis*, 13-424 (La.App. 3 Cir. 11/27/13), 127 So.3d 143, *writ denied*, 14-283 (La. 9/19/14), 148 So.3d 949; *State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59; *State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356.

This court has, however, previously reviewed claims of excessiveness where no motion to reconsider sentence was filed or objection made, performing a bare excessiveness review. *See State v. Debarge*, 17-670 (La.App. 3 Cir. 2/7/18), 238 So.3d 491; *State v. Price*, 16-899 (La.App. 3 Cir. 4/5/17), 216 So.3d 304; *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111; *State v. Jackson*, 14-9 (La.App. 3 Cir. 6/18/14), 146 So.3d 631, *writ denied*, 14-1544 (La. 2/27/15), 159 So.3d 1066.

Louisiana courts have laid out the following guidelines with regard to excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061, a panel of this court observed that:
>
> > While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-

2784 (La.5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06 (alteration in the original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261. Because Defendant failed to file a motion to reconsider sentence, we will review Defendant's claim as a bare excessiveness claim.

Initially, we note that first degree rape is defined as a violent crime under La.R.S. 14:2 and has only one possible statutory sentence under La.R.S. 14:42(D)(1), mandatory life imprisonment without the benefit of probation, parole, or suspension of sentence.[9] It is one of the most heinous crimes in our legal system, carrying the same penalty as non-capital murder.

At the time of sentencing, Defendant was thirty-seven years old and was convicted of raping his ten-year-old daughter, N.P. Ms. Samuel, his sister, also stated that Defendant molested her when she was approximately the same age. Defendant had another first degree rape charge against the victim, N.P., pending in Point Coupee Parish. No presentence investigation was done.

As noted, there is a single statutory penalty for first degree rape: life imprisonment. Accordingly, a comparison of sentences for similar crimes is not necessary. Barring a downward departure based on a claim that the mandatory life sentence is unconstitutional as to this Defendant under *Dorthey*, 623 So.2d 1276 (La.1993), everyone convicted of this crime has the same statutory life sentence.

Defendant contends "[t]he trial court failed to acknowledge its inherent right to individually determine whether a sentence is constitutional, regardless of the

---

[9]  In fact, La.R.S. 14:42(D)(2) provides a procedure for seeking the death penalty for aggravated rape when the victim is under the age of thirteen. This provision of law, however, was declared unconstitutional in *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641 (2008).

mandatory minimums established by the legislature[,]" as explained in *Dorthey*. This court has previously found that it is incumbent upon a defendant to argue for a downward departure when he feels a mandatory sentence is unconstitutional. *See State v. Kight*, 18-974 (La.App. 3 Cir. 6/5/19), 275 So.3d 26, *writ denied*, 19-1226 (La. 10/8/19), 280 So.3d 591. Defendant has failed to raise or particularize a claim that he is actually entitled to a downward departure, instead merely contending the trial court failed to recognize the possibility of such a departure. As this court noted in *State v. Paddio*, 02-722, pp. 16-17 (La.App. 3 Cir. 12/11/02), 832 So.2d 1120, 1131 (citations omitted), *writ denied*, 03-402 (La. 2/13/04), 867 So.2d 682:

> [A] court may depart from a minimum sentence only if it finds that there is clear and convincing evidence that rebuts the presumption of constitutionality. To rebut the presumption, a defendant must show, by clear and convincing evidence, that, "because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case."

As Defendant failed to present any particularized claim that he is entitled to a downward departure, or evidence in support thereof, Defendant's assignment of error that his sentence is unconstitutionally excessive lacks merit.

## DISPOSITION

For the foregoing reasons, we affirm Defendant's conviction and sentence.

**CONVICTION AND SENTENCE AFFIRMED**.